[No. D038811. Fourth Dist., Div. One. Mar. 12, 2003.]

TUCHSCHER DEVELOPMENT ENTERPRISES, INC., Plaintiff and Appellant, v.
SAN DIEGO UNIFIED PORT DISTRICT et al., Defendants and Respondents.

1220

1222

**COUNSEL**

Kolodny & Pressman, Joel M. Pressman; Boudreau, Albert & Wohlfeil, Joel R. Wohlfeil; Mazzarella, Dunwoody & Caldarelli and Mark C. Mazzarella for Plaintiff and Appellant.

Post, Kirby Noonan & Sweat, David J. Noonan, Kristen T. Bruesehoff and Steven T. Coopersmith for Defendants and Respondents.

**OPINION**

**O'ROURKE, J.**—Appellant Tuchscher Development Enterprises, Inc. (TDE), sued the San Diego Unified Port District and one of its then commissioners David Malcolm (hereafter the Port District and Malcolm, or collectively, respondents) for inducing breach of contract, intentional and negligent interference with prospective economic advantage, and violation of the unfair competition law (Bus. & Prof. Code, § 17200 et seq.) stemming from respondents' conduct alleged to have interfered with an exclusive negotiating agreement between TDE and other entities relating to the commercial development of certain property. Respondents moved to strike TDE's complaint under Code of Civil Procedure section 425.16 (commonly referred to as the anti-SLAPP statute),[1] asserting the lawsuit arose from respondents' exercise of their rights of petition and free speech in connection with a public issue. The trial court granted the motion to strike, denied TDE's reconsideration motion, awarded respondents attorney fees, and entered judgment in respondents' favor. On appeal, TDE contends section 425.16 does not apply to its causes of action because there was no public issue that warranted Malcolm or the Port District's involvement and there was no pending public process—i.e., hearings before the Port District or California Environmental Quality Act (CEQA) proceedings—in which respondents' statements or writings occurred. TDE further contends that even assuming the anti-SLAPP statute applied, it established a probability of success on the merits of its claims against respondents. Finally, TDE contends the court erred by denying reconsideration and the opportunity to

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise indicated. "SLAPP" stands for "strategic lawsuit against public participation." (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1127 [104 Cal.Rptr.2d 377, 17 P.3d 735].)

conduct further discovery, and awarding respondents $55,900 in attorney fees. ■■■ We reject these contentions and affirm the judgment.[2]

## FACTUAL AND PROCEDURAL BACKGROUND

In November 1998, after several public notices and hearings, TDE entered into an exclusive negotiating agreement (the negotiating agreement) with the City of Chula Vista and the Chula Vista Redevelopment Agency (collectively the City) under which the City and TDE would take preliminary steps and negotiate towards a development agreement for the creation of a mixed use real estate project (the project or Crystal Bay) on certain bayfront property within the City. The negotiating agreement contained an exclusivity clause providing that during the agreement's term, the City "agree[d] not to negotiate with any other person or entity regarding the acquisition and development of the Project except for those owners or tenants of the Property to whom [the City] is obligated to extend owner participation rights."[3] As part of its preliminary steps toward the project, TDE obtained an option to purchase land from the primary landowner within the project area, Chula Vista Capital (CVC), a private company. That option was to expire on February 18, 2000. CVC waived its owner participation rights in connection with that option. In October 1999, the City agreed to extend the negotiating agreement's expiration date to May 17, 2000.

Both the February 18, 2000 option deadline, and the May 17, 2000 negotiating agreement deadline passed without TDE and the City reaching terms of a development agreement for Crystal Bay.

TDE eventually sued respondents, the City and several entities referred to as the Lennar defendants[4] for inducing breach of contract, intentional and negligent interference with prospective economic advantage, and violation

---

[2]Several days before oral argument in this matter, the parties submitted a stipulated request to dismiss this appeal. We are not required to dismiss the appeal on stipulation at this stage, and we have exercised our discretion to proceed with our opinion because of the importance of the issues presented. (See *City of Morgan Hill v. Brown* (1999) 71 Cal.App.4th 1114, 1121, fn. 5 [84 Cal.Rptr.2d 361].)

[3]The exclusivity provision further states: "Notwithstanding the foregoing, the [City] reserves the right to negotiate with parties with powers of condemnation with respect to all [City] properties. [The City] will, at its sole cost and expense, extend owner participation rights to all persons entitled thereto by law, and in connection therewith. [The City] will retain full and unfettered discretion to extend owner participation rights to current property owners in the manner required by law, and to consider and evaluate any owner participation proposals submitted."

[4]Specifically, these defendants were Lennar Corporation, LNR Property Corporation, Lennar Partners, and Lennar Communities (collectively Lennar). Procedurally, TDE first unsuccessfully filed a claim for damages against the Port District, which was deemed

of the unfair competition law. The gist of TDE's complaint was that respondents conspired with Lennar to deprive TDE of the benefits of the negotiating agreement by disrupting the City's staff from negotiating the development agreement and inducing the City to cease negotiations. TDE alleged respondents furthered the conspiracy by (1) communicating with the mayor and other agents and employees of the City of Chula Vista, and (2) facilitating communications and meetings between Lennar and a CVC representative, and that respondents' objective was to secure the rights to develop both the Crystal Bay project and the Port District's own commercial property located south of the project site.

Respondents moved to strike TDE's complaint under section 425.16. They argued all of the causes of action against them fell within the statute because their alleged oral and written statements were made in connection with governmental review of plans for the commercial development of the Crystal Bay project and Port District properties, which was also an issue of public interest. Respondents further argued TDE could not defeat the motion by proving a probability of prevailing on its claims because (1) Government Code section ·810 et seq. immunized their actions; (2) the official duty privilege of Civil Code section 47, subdivision (a) protected their statements; and (3) the unfair competition law did not apply to governmental entities.

In opposition, TDE argued respondents did not meet their threshold burden of demonstrating section 425.16 applied because the development of Crystal Bay was not yet an issue of public interest, and respondents' actions were not taken in connection with a public issue because no formal public process—i.e., hearings before the Port District or CEQA proceedings—had been initiated. TDE further asserted respondents' conduct was not protected by any immunity or privilege afforded to the government or its officials. TDE finally argued it readily established prima facie tort causes of action against respondents, submitting the declaration of TDE's president and chief executive officer, William Tuchscher, as well as several documents it argued exemplified respondents' interfering communications. Tuchscher averred that in February of 2000, a few months before the negotiating agreement was to expire, he learned Malcolm had been communicating with Lennar and various City representatives in closed door meetings, telephone calls and e-mails concerning the proposed Crystal Bay project. He listed examples of such communications as follows:

(a) a January 18, 2000 electronic mail communication between two Lennar representatives, Bob Santos and Jim Moxham, in which Moxham reported a message from the director of Chula Vista's community development

rejected. It filed its initial complaint in November 2000 against the Lennar entities only. The operative pleading is TDE's first amended complaint filed on February 15, 2001.

department, Chris Salomone, in which Salomone told him Malcolm felt Port District staff was leaning toward "giving Lennar an exclusive";

(b) a February 15 electronic mail communication from Santos to "cstephen" reporting that Malcolm was putting the question of authorization for staff to negotiate with Lennar on a February 22 meeting agenda;

(c) a February 23 electronic mail communication from Santos to Curt Stephenson, Jim Moxham and Riley Johnson reporting what Malcolm told Santos about the February 22 meeting;

(d) a February 24 telephone call in which Malcolm told Tuchscher "the Mayor wants one project and one project team"; and

(e) a March 6 letter from Santos to Malcolm in which Santos reiterated Lennar's strong interest in developing the Port District's Chula Vista property, and indicated interest in Malcolm's proposal that Lennar enter into a joint development agreement with the City and Port District. In part, Santos's letter states: "This agreement would place a firm obligation on Lennar to construct H St. Marina View Parkway and demolish the existing structures on Port property. (Lennar would lose this investment only if an acceptable commercial agreement did not occur[.]) In exchange, Lennar would be allowed to develop residential housing on the adjacent fee owned property and commercial on Port property."

Further, Tuchscher related his understanding of conversations among City representatives and recounted conversations he had with Port District staff and City representatives in which those persons largely related Malcolm's conduct to him.[5] Tuchscher stated he had contacted a Lennar representative in the winter of 2000, who looked into Lennar's computer database and

---

[5]Tuchscher averred: "On March 20, 2000, I had a conversation with Port staff (Tom Morgan, Roy Nail and Jeff Gabriel) where they told me they were 'put under significant pressure from Chula Vista to sole source Lennar.' They further stated, 'Chris Salomone delivered Lennar corporate collateral to a Port Commission meeting.['] Afterwards, Debra DePratti (Chula Vista's project manager for Crystal Bay) confirmed to me that staff was doing this without direction from the city council, but at the behest of David Malcolm. [¶] On April 10, 2000, I spoke with City Council Member, Mary Salas, who had spoken with Frank Urtassan (Port Commissioner). I understand Mr. Urtassan confirmed that he had been told by David Malcolm that 'the City had selected Lennar [to build out the Bay Front], and that the entire City Council had taken action in this regard[.]' . . . This prompted Ms. Salas to write a letter to City Council member, Paul Speer, to be careful to ensure 'public process' on the selection of a developer. . . . [¶] On April 13, 2000, I understand Patty Davis (a City Council Member) made Chula Vista staff aware that Malcolm misrepresented to other Port Commissioners that the City Council allegedly had taken action to select Lennar to develop the Bay Front. In this regard, I understand Ms. Davis had spoken with Port Commissioners Van

confirmed Crystal Bay was being pursued by Lennar and that the " 'contact person, procuring cause, or broker was David Malcolm.' " Finally, Tuchscher referred to a document received in discovery reflecting what he said were Santos's handwritten notes of a January 11, 2000 meeting among Lennar representatives, Malcolm and Salomone in which Santos noted Malcolm said TDE was up against deadlines and out of money.

After sustaining numerous evidentiary objections lodged by respondents challenging the admissibility of portions of TDE's declaration and several of the supporting documents, the court tentatively granted the motion as to all four of TDE's causes of action. It found respondents' acts were made in connection with an issue under consideration or review by a legislative body or other official proceeding authorized by law under section 425.16, subdivision (e)(2). It further ruled, in light of its evidentiary rulings, that TDE failed to meet its burden of establishing a probability of prevailing on the merits of its causes of action. The court ruled respondents were entitled to attorney fees under section 425.16, subdivision (c).

At oral argument on the matter, the court affirmed its telephonic ruling. It also denied TDE's verbal request, made by its counsel at the hearing, for an order shortening time to hear a motion for certain discovery. TDE moved for reconsideration and a stay of entry of judgment, and shortly thereafter filed a written motion for specified discovery under section 425.16, subdivision (g), claiming new information and circumstances had arisen in the intervening month since the court's prior discovery ruling. The court denied the discovery motion on the ground it sought information to support TDE's reconsideration motion and was therefore untimely under section 425.16, subdivision (g). As for TDE's motion for reconsideration/stay, the court granted reconsideration as to certain exhibits, but nevertheless affirmed its order granting respondents' section 425.16 motion. It denied TDE's request for a stay of entry of judgment and on August 16, 2001, entered judgment in respondents' favor.

The court awarded respondents $226 in costs and $55,900 in attorney fees, which included fees incurred by respondents in opposing one of TDE's discovery requests as well as its reconsideration motion; the court found

---

Deventer and Urtassan. [¶] In or about late February 2000, I was told by Chris Salomone, Chula Vista Director of Community Development, that Malcolm advocated to various Chula Vista representatives that he and the Port District desired a total revision to the Crystal Bay land plan submitted by TDE. Malcolm promoted a relocation of all of Crystal Bay's commercial projects to the Port District's Bayfront property, and that the Crystal Bay property should be planned exclusively as residential housing (a land use not allowed on Port tideland properties)."

those fees sufficiently connected to the motion to strike and thus recoverable under the statute. TDE appeals from the August 2001 judgment as well as the postjudgment attorney fees and costs order.

## DISCUSSION

### I. Section 425.16: Burdens and Standard of Review

Section 425.16 permits a court to dismiss certain types of nonmeritorious claims early in the litigation by means of a special motion to strike. (*Chavez v. Mendoza* (2001) 94 Cal.App.4th 1083, 1087 [114 Cal.Rptr.2d 825]; *Damon v. Ocean Hills Journalism Club* (2000) 85 Cal.App.4th 468, 473 [102 Cal.Rptr.2d 205] (*Damon*).) Section 425.16, subdivision (b)(1) provides in part: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

In subdivision (e) of section 425.16, the Legislature set out the types of First Amendment activity from which a cause of action may arise to fall within the meaning of subdivision (b)(1). As pertinent here, the subdivision provides: "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: . . . (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; . . . (4) . . . any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

"Section 425.16, subdivision (b)(1) requires the court to engage in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim. Under section 425.16, subdivision (b)(2), the trial

court in making these determinations considers 'the pleadings, and support-ing and opposing affidavits stating the facts upon which the liability or defense is based.' " (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685] (*Equilon*).) These deter-minations are legal questions subject to our de novo review. (*Damon, supra,* 85 Cal.App.4th at p. 474; *ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 999 [113 Cal.Rptr.2d 625]; *Paul for Council v. Hanyecz* (2001) 85 Cal.App.4th 1356, 1364 [102 Cal.Rptr.2d 864], disapproved on other grounds in *Equilon,* at p. 68, fn. 5.)

## II. *Application of Section 425.16 to TDE's Causes of Action*

■ We begin with the first inquiry in the section 425.16 analysis, which TDE only briefly addresses: whether it has made a threshold showing that the challenged causes of action "aris[e] from" protected activity. (*Id.,* subd. (b)(1); *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76 [124 Cal.Rptr.2d 519, 52 P.3d 695] (*City of Cotati*); *Equilon, supra,* 29 Cal.4th at p. 67.) "In the anti-SLAPP context, the critical consideration [for the defend-ant's initial burden] is whether the cause of action is based on the defend-ant's protected free speech or petitioning activity." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 [124 Cal.Rptr.2d 530, 52 P.3d 703] (*Navellier*), italics omitted.) The statute's definitional focus is not on the form of the plaintiff's cause of action but rather the defendant's activity giving rise to his or her asserted liability and whether that activity constitutes protected speech or petitioning. (*Id.* at p. 92.) To decide whether this initial "arising from" requirement is met, we consider not only the pleadings, but also the supporting and opposing affidavits stating the facts on which the liability or defense is based. (*Id.* at p. 89; *City of Cotati,* at p. 79.)

■ TDE contends its lawsuit was not intended to chill respondents' lawful right to free speech; it was intended to obtain monetary redress for respondents' unlawful speech and conduct that caused it financial damage. TDE also contends the matter was not the subject of any formal public process, although it concedes the development itself is an issue of public interest. It argues: "[W]hile the development of Crystal Bay was an 'issue of public interest,' no issue was before the Port District concerning the project. The only 'public issue' at stake was whether or not TDE could negotiate a [development agreement] with [the City]. That issue did not, and should not, have involved the Port District and Malcolm in any manner, and certainly did not give rise or authority to [*sic*] Malcolm under any law to bring Lennar to [the City] to develop the . . . property."

Respondents maintain any communication by them to the Chula Vista mayor, Chula Vista city manager, and other Chula Vista agents and employ-ees was rationally connected to the City and Port District's review of plans

for the commercial development of the Crystal Bay and Port District parcels and was therefore made "in connection with an issue under consideration or review by a legislative, executive or judicial body, or any other official proceeding authorized by law" under section 425.16, subdivision (e)(2). They argue their communications to Lennar are likewise protected under this subdivision, which does not require "that the writing or speech be promulgated directly to the official body." (*Ludwig v. Superior Court* (1995) 37 Cal.App.4th 8, 17 [43 Cal.Rptr.2d 350] (*Ludwig*), italics omitted.) As an independent basis for their motion, respondents further argue the communications were made in connection with a public issue or an issue of public interest so as to fall under subdivision (e)(4) of the statute; that this prong does not require the communications be made publicly or in connection with issues before an official proceeding.

We need not consider whether respondents' communications were made in connection with an issue under consideration or review by a legislative, executive or judicial body, because there appears to be no dispute that the proposed development of Crystal Bay is a matter of public interest, and thus respondents' statements and writings fall within subdivision (e)(4) of section 425.16. ▮ "The definition of 'public interest' within the meaning of the anti-SLAPP statute has been broadly construed to include not only governmental matters, but also private conduct that impacts a broad segment of society and/or that affects a community in a manner similar to that of a governmental entity." (*Damon, supra*, 85 Cal.App.4th at p. 479.)

▮ Here, the activity underlying each of TDE's causes of action against respondents is Malcolm's communications to either the City or Lennar involving the proposed development of Crystal Bay and other bayfront property. The declaration of TDE's president and chief executive officer contains statements demonstrating the Crystal Bay development was a matter of public concern, having broad effects on the community. He averred Chula Vista's mayor and Chula Vista staff encouraged TDE to pursue the development of a large-scale multi-use, resort-oriented, master-planned project on the mid-bayfront in Chula Vista; that the Chula Vista City Council approved the exclusive negotiating agreement with TDE after being publicly noticed and agendized on four separate occasions; and that, in planning the project, TDE conducted numerous public forums with government agencies, local community groups, and individuals, as well as organized meetings with various environmental and habitat organizations, including the United States Fish and Wildlife Service and the California

Department of Fish and Game.[6] The prospect of commercial and residential development of a substantial parcel of bayfront property, with its potential environmental impacts, is plainly a matter of public interest. (E.g., *Ludwig, supra*, 37 Cal.App.4th at p. 15 [development of a discount mall "with potential environmental effects such as increased traffic and impact[s] on natural drainage, was clearly a matter of public interest"].)

TDE's argument that it did not intend to chill free speech rights by its lawsuit is irrelevant to the analysis. ▮ Although the Legislature has characterized SLAPP suits as having an underlying meritless goal to chill the defendant's exercise of First Amendment rights (§ 425.16, subd. (a);[7] see *Dowling v. Zimmerman* (2001) 85 Cal.App.4th 1400, 1414 [103 Cal.Rptr.2d 174] (*Dowling*)), the California Supreme Court has recently held plaintiff's subjective motivations in bringing the suit are irrelevant to the statute's application. (*City of Cotati, supra*, 29 Cal.4th at pp. 73-74; *Navellier, supra*, 29 Cal.4th at p. 88.) Thus, a defendant moving under section 425.16 need not demonstrate the targeted action was intended to chill its free speech or petition rights, nor need it show the action had such an effect. (*City of Cotati*, at pp. 73-75.)

▮ TDE's other argument—that the public issue of the development agreement did not involve respondents or give them the authority to bring Lennar to Chula Vista—is similarly misplaced. This argument improperly focuses on the legitimacy of respondents' conduct and thus " 'confuses the threshold question of whether the SLAPP statute [potentially] applies with the question whether [an opposing plaintiff] has established a probability of success on the merits.' " (*Navellier, supra*, 29 Cal.4th at p. 94, quoting *Fox*

---

[6]More fully, Tuchscher avers: "To properly plan the [Crystal Bay] project, TDE conducted numerous public forums, presenting the project to government agencies, local community groups and interested individuals. In addition, TDE, in conjunction with the City of Chula Vista, engaged environmentalists and local conservation groups in a series of organized meetings to identify, and ultimately resolve, environmental and habitat impacts associated with the development of Crystal Bay. The meeting included habitat groups such as: the Environmental Health Coalition, San Diego Audubon Society, SurfRider Foundation, Baykeeper, The Sierra Club, SWEA, and others. The group became informally known as the 'Friends of South Bay Wildlife.' Also attending these meetings were the national Fish and Wildlife Service (Refuges and Ecological Services), California Fish and Game, TDE's consultants and Chula Vista."

[7]Subdivision (a) of section 425.16 provides: "The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. To this end, this section shall be construed broadly."

*Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 305 [106 Cal.Rptr.2d 906].) "[A]ny 'claimed illegitimacy of the defendant's acts is an issue which the plaintiff must raise and support in the context of the discharge of the plaintiff's [secondary] burden to provide a prima facie showing of the merits of the plaintiff's case.' " (*Navellier*, at p. 94, italics omitted.)

Having concluded TDE's claims fall within the ambit of section 425.16, subdivision (e)(4), we proceed to the second prong of the section 425.16 analysis and determine whether respondents have met their burden to establish a probability of prevailing on the merits.

### III. *Probability of Prevailing on the Merits*

"In order to establish a probability of prevailing on the claim (§ 425.16, subd. (b)(1)), a plaintiff responding to an anti-SLAPP motion must ' "state[ ] and substantiate[ ] a legally sufficient claim." ' [Citations.] Put another way, the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' [Citations.] In deciding the question of potential merit, the trial court considers the pleadings and evidentiary submission of both the plaintiff and the defendant (§ 425.16, subd. (b)(2)); though the court does not *weigh* the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim." (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 [123 Cal.Rptr.2d 19, 50 P.3d 733] (*Wilson*); see also *Yu v. Signet Bank/Virginia* (2002) 103 Cal.App.4th 298, 317 [126 Cal.Rptr.2d 516].)

### A. *Evidentiary Showing*

As a threshold matter, TDE contends it presented substantial admissible evidence to support its claims. It maintains that, in reaching its decision, the trial court erred by weighing the evidence instead of considering whether a triable issue of fact existed from the evidence presented.

TDE's challenge to the trial court's ruling is ultimately immaterial as this court must independently consider the moving and opposing papers.

Nevertheless, the excerpt from the ruling cited by TDE[8] shows the court simply considered and ruled on the admissibility of TDE's opposing evidence, not that it weighed respondents' evidence against TDE's in any way. Its admissibility determination was proper under the applicable inquiry, which respondents correctly point out is whether TDE established with competent and admissible evidence it has a probability of prevailing on its claims. (*Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 654-655 [49 Cal.Rptr.2d 620], disapproved on other grounds in *Equilon, supra,* 29 Cal.4th at p. 68, fn. 5; *Evans v. Unkow* (1995) 38 Cal.App.4th 1490, 1497-1498 [45 Cal.Rptr.2d 624] (*Evans*); see e.g., *College Hospital, Inc. v. Superior Court* (1994) 8 Cal.4th 704, 719-720, fn. 6 [34 Cal.Rptr.2d 898, 882 P.2d 894] (*College Hospital*).) ▇ "An assessment of the probability of prevailing on the claim looks to *trial,* and the evidence that will be presented at that time. [Citation.] Such evidence must be *admissible.* [Citation.] As the court in *Wilcox* [*v. Superior Court* (1994) 27 Cal.App.4th 809, 830 [33 Cal.Rptr.2d 446], disapproved on other grounds in *Equilon, supra,* 29 Cal.4th at p. 68, fn. 5] explained, the plaintiff's burden of establishing 'facts to sustain a favorable decision if the evidence submitted . . . is credited' [citation] implies a requirement of admissibility, because 'otherwise there would be nothing for the trier of fact to credit.' [Citation.] At trial, 'the testimony of a witness concerning a particular matter is inadmissible unless he has personal knowledge of the matter.' [Citation.] An averment on information and belief is inadmissible at trial, and thus cannot show a probability of prevailing on the claim." (*Evans,* at pp. 1497-1498.)

In *Evans,* the court reviewed the California Supreme Court's analysis of section 425.13, a closely related statute having a similar probability-of-prevailing standard. (*Evans, supra,* 38 Cal.App.4th at p. 1498, citing *College Hospital, supra,* 8 Cal.4th at pp. 719-720.) Under section 425.13, a court may allow a plaintiff to file an amended pleading including a claim for punitive damages against a health care provider if the plaintiff establishes there is a substantial probability that he or she will prevail on the claim pursuant to Civil Code section 3294. (§ 425.13, subd. (a).) In *College Hospital,* the California Supreme Court held that under section 425.13 and

---

[8]TDE points to the following portion of the trial court's ruling: "As to defendant Malcolm, plaintiff's opposition . . . sets forth several 'examples of communications and documents' which purport to show that movants interfered with a contract or prospective economic advantage. This interference is the basis of each of plaintiff's four causes of action against movants. Of plaintiff's 'examples' . . . , only h through l, citing Exhibits 'N' through 'R', survive movants' objections. This evidence does not show that Malcolm interfered with any contract or prospective economic advantage between the plaintiff and the City of Chula Vista and/or the Redevelopment Agency."

similar statutes, including section 425.16 (*College Hospital*, at p. 718), the required motion "operates like a demurrer or motion for summary judgment in 'reverse.' Rather than requiring the *defendant* to defeat the plaintiff's pleadings by showing it is legally or factually meritless, the motion requires the *plaintiff* to demonstrate that he possesses a legally sufficient claim which is 'substantiated,' that is, supported by competent, admissible evidence." (*Id.* at p. 719.) Thus, for example, according to the court, where the evidence in the " 'supporting and opposing affidavits' either negates or fails to reveal the actual existence of a triable claim," the motion must be denied. (*Ibid.*)

In *Wilson, supra,* 28 Cal.4th at page 820, our high court more recently reinforced the view that a plaintiff opposing a section 425.16 motion must support its claims with admissible evidence. There, the court held a trial court's earlier denial of a special motion to strike under section 425.16 established probable cause to bring that action and precluded maintenance of a later malicious prosecution suit. (*Wilson*, at p. 820.) In reaching its conclusion the court explained: "In denying a motion to strike on the ground that the plaintiff has established the requisite probability of success . . . [a] trial court necessarily concludes that the plaintiff has substantiated a legally tenable claim through a facially sufficient evidentiary showing and that the defendant's contrary showing, if any, does not defeat the plaintiff's as a matter of law. This determination establishes probable cause to bring the claim, for such an action clearly is not one that ' "any reasonable attorney would agree . . . is totally and completely without merit." ' [Citation.] A claim that is legally sufficient and can be substantiated by competent evidence is, on the contrary, one that a 'reasonable attorney would have thought . . . tenable.' [Citation.]" (*Id.* at p. 821.) The court's discussion contemplates a SLAPP plaintiff's presentation of competent, i.e., admissible, evidence in support of its prima facie case in opposition to the motion.

However, respondents are incorrect to suggest the prima facie evidentiary showing required of TDE under section 425.16 is entirely different from the summary judgment existence of triable issue standard. In articulating the appropriate standard for assessing evidence under section 425.13 in *College Hospital*, the California Supreme Court pointed out its test—requiring the court in part to determine whether the evidence in supporting and opposing affidavits either negates or fails to reveal the actual existence of a *triable claim*—is "largely consistent" with the "prima facie" approach formulated by the Courts of Appeal in construing section 425.13, subdivision (a) and other similar statutes. (*College Hospital, supra,* 8 Cal.4th at pp. 719-720 & fn. 6 [finding "little substantive difference" between the "prima facie"

approach and the triable issue approach].) To apply the court's words in the context of a section 425.16 motion: "Under either formulation, a motion [under section 425.16] must be [granted if], after reviewing the supporting and opposing materials, the court concludes that the allegations made or the evidence adduced in support of the claim, even if credited, are insufficient as a matter of law to support a judgment . . . ." (*College Hospital*, at p. 720, fn. 6.)

 Using these evidentiary standards to determine whether TDE met its burden, we are compelled to disregard a substantial portion of TDE's evidence. The January and February 2000 electronic mail printouts, the letters and the handwritten notes are without foundation. (Evid. Code, § 1401; see *Jacobson v. Gourley* (2000) 83 Cal.App.4th 1331, 1334 [100 Cal.Rptr.2d 349].) Tuchscher's declaration recounting the Lennar representative's report on the contents of Lennar's computer database consists of hearsay. We further reject Tuchscher's declaration to the extent it is supported only by information and belief or his mere understanding of events (e.g., pars. 13, 18, 18(g), 18(h)). (*Evans, supra*, 38 Cal.App.4th at pp. 1497-1498.) And many of the statements made in Tuchscher's declaration, including as to respondents' authority to involve themselves with the project and the economic boon to Lennar, are argumentative, speculative and impermissible opinions, and also lack foundation and personal knowledge.[9]

Nevertheless, we must credit all *admissible* evidence favorable to TDE and indulge in every legitimate favorable inference that may be drawn from it. With these principles in mind, for each of TDE's causes of action we

---

[9]Examples of such statements are:

"In my experience as a developer of large scale projects, including those on Port tidelands property, the Port District, Port Staff and Port Commissioners (including David Malcolm) have no right to interfere with a project being processed outside of Port tidelands."

"To my educated understanding of the public process, under no circumstances should a commissioner (like David Malcolm) be conducting 'closed door meetings' to advocate a personal position as an individual Port Commissioner. It is also my experience that a Port Commissioner cannot privately advocate land use changes if such position is not the official public policy of the Port District."

"If Malcolm and the Port District could convince Chula Vista to utilize Lennar for the entire development of both projects, and thereby eliminate TDE as a competitor, the economic boon to the Port District is approximated as follows: [¶] Having all of the hotel and commercial uses of Crystal Bay on Port District property would conservatively generate the following approximate revenues: [¶] 400 Room Resort: The Port District leases properties for hotels based on room revenue, and a percentage of various other departments (food & beverage, alcohol, etc.). In my experience, the Port typically charges hotel properties 13% of total revenues. TDE calculations show this would equate to approximately $2,915,687 per year. On a 66-year lease this equals $192,435,380 in total lease consideration to the Port District from this hotel alone. . . ."

proceed to determine whether there is admissible evidence showing facts that would, if proved at trial, support a judgment in its favor on those claims. (*Kyle v. Carmon* (1999) 71 Cal.App.4th 901, 907 [84 Cal.Rptr.2d 303].)

B. *Inducing Breach of Contract*

█ The elements of a cause of action for intentional interference with contract are: (1) a valid contract between plaintiff and a third party; (2) defendants' knowledge of the contract; (3) defendants' intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 55 [77 Cal.Rptr.2d 709, 960 P.2d 513]; *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 514, fn. 5 [28 Cal.Rptr.2d 475, 869 P.2d 454]; *LiMandri v. Judkins* (1997) 52 Cal.App.4th 326, 339 [60 Cal.Rptr.2d 539].) The required intent is shown if the defendant "knows that the interference is certain or substantially certain to occur as a result of his action. The rule applies, in other words, to an interference that is incidental to the actor's independent purpose and desire but known to him to be a necessary consequence of his action." (*Quelimane*, at p. 56.) Whether the interference was justified as merely incidental to the defendant's legitimate pursuit of his own interests is a question of fact. (*Ibid.*) Contrary to respondents' argument, "[w]rongfulness independent of the inducement to breach the contract is not an element of the tort of intentional interference with existing contractual relations . . . ." (*Id.* at p. 55, italics omitted.)

█ On appeal, TDE does not explain how its evidence substantiates the elements of this claim; it simply contends respondents failed to establish their actions were statutorily immune or privileged as they had asserted in their motion for section 425.16 relief. But this argument misunderstands the burdens on a section 425.16 motion. In moving for section 425.16 relief, it was not respondents' burden to show TDE *could not* demonstrate a probability of prevailing on its claims; its only burden was to establish that the claims fell within the ambit of the statute. The fact respondents also made arguments directed toward the second probability-of-prevailing prong does not relieve TDE of its own statutory burden, that is, " ' "[to] make a prima facie showing of facts which would, if proved at trial, support a judgment in plaintiff's favor." ' " (*Dowling, supra,* 85 Cal.App.4th at p. 1417.) █ In this way section 425.16 differs significantly from the summary judgment statute, which places the initial burden of production on the moving defendant to demonstrate the opposing plaintiff cannot establish one or more elements of his or her causes of action. (See *Aguilar v. Atlantic Richfield Co.*

(2001) 25 Cal.4th 826, 850, 853-854, 855 [107 Cal.Rptr.2d 841, 24 P.3d 493].) Consequently, TDE's opening brief arguments do not assist us in our review.

We in any event assess the pleadings and admissible evidence in the record to undertake our independent review. In its cause of action for inducing breach of contract, TDE alleges respondents, knowing of the negotiating agreement's existence, met with, spoke to, corresponded with and exchanged TDE's proprietary information with Chula Vista's mayor, Shirley Horton, the Chula Vista city manager and other Chula Vista agents and employees to encourage a relationship between the City and Lennar and discourage any development agreement between TDE and the City. It also alleges Malcolm and Mayor Horton facilitated communications and meetings between Lennar and a CVC representative in order to encourage a purchase agreement between CVC and Lennar and discourage further negotiations between CVC and TDE. TDE alleges this conduct caused the City to breach the negotiating agreement, ignore the staff's recommendation to negotiate a development agreement with TDE, and refuse to extend the negotiating agreement's deadline, causing it damages.

While these allegations may state a prima facie case of interference with the negotiating agreement, the record is absent any *admissible* direct evidence or evidence from which we may infer respondents' actions induced a breach or disruption. The negotiating agreement in no way obligated the City to *enter into* a development agreement; the City's staff was merely obligated during the agreement's term to "negotiate diligently and in good faith the terms and conditions of [a development agreement]" to present to the City Board for review and consideration. Notably, the sole evidence of the City's abandonment or unreasonable failure to negotiate is in Tuchscher's declaration, in which he avers as a result of the purported communications between respondents, Lennar and the City "and the heavy pressure wrongfully and greedily exerted by Malcolm and the Port District, [the City] abandoned negotiations towards a [development agreement], let the [negotiating agreement] expire without good faith negotiations with TDE, and Lennar was soon pursuing the development of the Crystal Bay project." We disregard these conclusionary and argumentative statements. (Cf. *Hayman v. Block* (1986) 176 Cal.App.3d 629, 638-639 [222 Cal.Rptr. 293] [affidavits must cite evidentiary facts, not legal conclusions or ultimate facts]; Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2002) ¶¶ 10:119 (rev. #1 2001), 10:125, 10:127, pp. 10-43 to 10-46.) Giving

credit to all of TDE's *admissible* evidence, it shows the City merely permitted the negotiating agreement to expire, as was the City's right under its terms.[10]

Even if we disregarded TDE's evidentiary problems and assumed the Port District and Malcolm had discussions with Lennar, another developer, regarding the proposed project, or that Malcolm expressed to City representatives his vision for a different arrangement for Crystal Bay, such talks do not by themselves establish the City improperly *negotiated* with Malcolm or Lennar, abandoned the negotiating agreement, or otherwise refused to meet and confer or negotiate in good faith with TDE. It is not reasonable to infer from Malcolm's advocacy efforts directed to City representatives that the City did not in any event use its best efforts to deal exclusively with TDE while the negotiating agreement was in place. Indeed, TDE's president states in his declaration that during that 18-month period, TDE and Chula Vista "had interaction . . . several times daily" and also worked together extensively to resolve environmental issues pertinent to Crystal Bay.

Also, important to the damages analysis, there was no guarantee the City would have approved the development agreement even had TDE and the City reached final terms for such an agreement. The negotiating agreement contains a "No Pre-Commitment" clause providing: "The inclusion of the specific terms set forth above shall not be deemed to be acceptance of such items by either party until such time as the [City] may approve, and the parties execute the [development agreement]." It also contains a provision entitled "Retention of Discretion to Approve the Project and DDA [development agreement]" that states in part: "The parties understand that the [City] has the complete and unfettered discretion to reject the [development agreement] without explanation or cause."

Absent competent evidence supporting the elements of causation, disruption/breach, or damages, TDE has failed to meet its burden to establish a probability of prevailing on the merits of its cause of action for inducing breach of contract. Stated another way, these elements are not supported by a prima facie showing of facts sufficient to sustain a favorable judgment in TDE's favor. Having reached this conclusion, we need not reach respondents' contention their actions were statutorily immune under Government Code sections or protected by the official duty privilege of Civil Code section 47, subdivision (a).

---

[10]Although the negotiating agreement grants the City's executive director the authority to extend the agreement's term, it is within his sole discretion to do so.

## C. *Intentional/Negligent Interference with Prospective Economic Advantage*

We similarly conclude TDE cannot meet its burden to establish a probability of prevailing on its causes of action for intentional and negligent interference with prospective economic advantage, which are based on the same allegations and evidence as its claim for inducing breach of contract. To prevail on the interference with prospective economic advantage causes of action, TDE has the burden of proving not only that respondents knowingly or negligently interfered with an economic relationship, but that they engaged in conduct that was wrongful by some legal measure other than the fact of interference itself. (*Della Penna v. Toyota Motor Sales, U. S.A., Inc.* (1995) 11 Cal.4th 376, 393 [45 Cal.Rptr.2d 436, 902 P.2d 740]; *Gemini Aluminum Corp. v. California Custom Shapes, Inc.* (2002) 95 Cal. App.4th 1249, 1256 [116 Cal.Rptr.2d 358] (*Gemini*); *National Medical Transportation Network v. Deloitte & Touche* (1998) 62 Cal.App.4th 412, 439-440 [72 Cal.Rptr.2d 720] [independently wrongful requirement applies to negligent interference claims].)

In opposition to respondents' section 425.16 motion, TDE did not explain how its evidence supported the elements of these claims. Likewise, TDE's opening brief arguments focus only upon the defenses of governmental immunity and privilege, and do not address this element (or any other) of its interference causes of action. On this basis, we could conclude without further discussion that TDE failed to meet its burden of making a prima facie showing of a probability of success on the merits. But even considering TDE's arguments in reply directed toward the wrongfulness prong of these causes of action, we must conclude it has not met its burden. In its reply brief, TDE lists Malcolm's wrongful acts as: (1) interfering with the negotiating agreement; (2) conspiring with Lennar and the City to oust TDE; (3) assisting in drafting language in an option agreement between Lennar and CVC entered into in April 2000; and (4) advocating the City to redesign Crystal Bay with Lennar as its developer. According to TDE, these acts "constituted anticompetitive conduct in light of the [negotiating agreement] providing the sole negotiating rights to Crystal Bay to TDE."

There are several reasons why this argument must fail. First, such unsupported argument does not persuade us these acts are wrongful for purposes of its interference with economic advantage causes of action. (See *Gemini, supra,* 95 Cal.App.4th at p. 1258; *Kurinij v. Hanna & Morton* (1997) 55 Cal.App.4th 853, 865 [64 Cal.Rptr.2d 324] [appellate court will not consider points unsupported by citation to pertinent authority].) Second, as we have

stated, TDE's evidence fails in many respects and does not establish any purported "interference" or conspiracy. In addition to its formation and operation and resulting damage, in order to establish a civil conspiracy a plaintiff must prove a wrongful act done in the furtherance of the conspiracy. (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 510-511 [28 Cal.Rptr.2d 475, 869 P.2d 454]; see also *Kidron v. Movie Acquisition Corp.* (1995) 40 Cal.App.4th 1571, 1581 [47 Cal.Rptr.2d 752].) In this context, it is insufficient for TDE to baldly assert the wrongful conduct is the conspiracy. And even assuming respondents helped draft an agreement between Lennar and CVC or advocated their own development ideas to the City, such activity is not wrongful by some *legal measure*. (*Gemini*, at pp. 1258-1259 [reviewing California cases applying wrongfulness standard; standard encompasses acts constituting a breach of fiduciary duty, violation of a statute or a tort, or other independently actionable conduct].) Although the point is obvious, Malcolm, the Port District, Lennar and CVC were not parties to the negotiating agreement and thus they were not bound by any contractual obligation or duty to refrain from taking steps—either among themselves or with the City—to push their own development ideas for Crystal Bay. Assuming respondents had talks with the City or its representatives regarding Crystal Bay, such talks do not make *respondents'* communications wrongful apart from the (presumed) interference. Absent any contractual obligation to avoid discussing the issues with the City, respondents' conduct does not amount to a breach of contract or other independently wrongful act sufficient to support plaintiffs' interference with economic advantage claim.

Although it is suggested by some of its arguments, TDE does not (and did not before the trial court) meaningfully contend Malcolm's conduct was wrongful by some legal measure because it was outside the scope of his authority as a port commissioner, and thus we do not address that point.

D. *Violation of Unfair Competition Law*

Citing *Trinkle v. California State Lottery* (1999) 71 Cal.App.4th 1198, 1204 [84 Cal.Rptr.2d 496], TDE argues its cause of action under the unfair competition law (Bus. & Prof. Code, § 17200 et seq.) must survive against both respondents because the Port District should be held vicariously liable for Malcolm's actions. TDE apparently concedes it cannot maintain such a cause of action against the Port District because, as a governmental entity, it is not a "person" within the meaning of Business and Professions Code section 17201. (*California Medical Assn. v. Regents of University of*

*California* (2000) 79 Cal.App.4th 542, 551 & fn. 14 [94 Cal.Rptr.2d 194] [state university school of medicine and hospital are a public entity and thus is not a "person" within scope of prohibitions of unfair competition law, even though hospital is involved in commercial activity]; *Trinkle*, at p. 1203; *Janis v. California State Lottery Com.* (1998) 68 Cal.App.4th 824, 831 [80 Cal.Rptr.2d 549] [governmental entities, such as the Lottery Commission, are not included in the statutes' definitions of "persons"]; *Rider v. City of San Diego* (1998) 18 Cal.4th 1035, 1039-1040 [77 Cal.Rptr.2d 189, 959 P.2d 347] [Port District is a governmental entity under the San Diego Unified Port District Act (Harb. & Nav. Code, appen. 1)].)

Even if we were to conclude a cause of action could be maintained against Malcolm, TDE does not explain with any reasoned argument or authority how Malcolm's actions were unlawful, unfair or fraudulent business acts or practices within the meaning of the unfair competition law. (See *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180 [83 Cal.Rptr.2d 548, 973 P.2d 527] [unfair competition law defines "unfair competition" to include any unlawful, unfair or fraudulent business act or practice].) It is not for us to make TDE's arguments for it, and consequently we do not consider the point. (*Gemini, supra*, 95 Cal.App.4th at p. 1258.)

### E. *New Evidence*

TDE contends the court erred when, after granting reconsideration and receiving certain newly discovered evidence, it nevertheless reaffirmed its ruling on respondents' section 425.16 motion to strike. According to TDE, such evidence, consisting of pleadings filed in a separate lawsuit (*Gorfine v. Malcolm* (Super. Ct. San Diego County, 2002, No. GIC759282) (*Gorfine*)) revealed inconsistent statements by Malcolm and the Port District relating to the Port District's authority and jurisdiction to involve itself in discussions concerning Crystal Bay, which should have operated as judicial estoppel in the present case. TDE argues that whether or not judicial estoppel applies, the inconsistency raises a triable issue as to "whether Malcolm exceeded his authority and jurisdiction by participating in negotiations concerning the Crystal Bay property"; and that a jury, not the trial court, should have decided if Malcolm's communications were wrongful and caused TDE damages.

Preliminarily, we reject respondents' argument we should not review these contentions. They maintain the trial court's order on the reconsideration

motion is not an appealable order because it effectively denied reconsideration. They do not recognize that TDE's argument is made in connection with his challenge to the trial court's reaffirmation of the section 425.16 ruling, and stems from his appeal from the judgment, not from any challenge to the trial court's order granting reconsideration. ██ " 'An order denying a motion for reconsideration is interpreted as a determination that the application does not meet the requirements of section 1008. If the requirements have been met to the satisfaction of the court but the court is not persuaded the earlier ruling was erroneous, the proper course is to grant reconsideration and to reaffirm the earlier ruling.' " (*Mink v. Superior Court* (1992) 2 Cal.App.4th 1338, 1342 [4 Cal.Rptr.2d 195].)

██ Turning to TDE's arguments as to judicial estoppel, we conclude the trial court correctly rejected application of that doctrine. ██ " ' "The doctrine of judicial estoppel, sometimes referred to as the doctrine of preclusion of inconsistent positions, is invoked to prevent a party from changing its position over the course of judicial proceedings when such positional changes have an adverse impact on the judicial process. [Citation.] 'The policies underlying preclusion of inconsistent positions are "general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings." ' [Citation.] Judicial estoppel is 'intended to protect against a litigant playing "fast and loose with the courts." ' [Citation.] Because it is intended to protect the integrity of the judicial process, it is an equitable doctrine invoked by a court at its discretion . . . . Judicial estoppel is most commonly applied to bar a party from making a factual assertion in a legal proceeding which directly contradicts an earlier assertion made in the same proceeding or a prior one. [Citations.]" ' [Citation.]" (*International Engine Parts, Inc. v. Feddersen & Co.* (1998) 64 Cal.App.4th 345, 350 [75 Cal.Rptr.2d 178].)

██ According to summary judgment papers filed by Malcolm in the *Gorfine* action, that case involved plaintiff's allegations that Malcolm committed violations of the Political Reform Act of 1974 (Gov. Code, § 81000 et seq.) by failing to report certain financial interests. A central issue was the Port District's jurisdiction, which would in turn establish the financial interests Malcolm and other Port District commissioners were obligated to disclose. In their moving papers, Malcolm and the Port District argued the Port District's jurisdiction extended only to tidelands, submerged lands in or adjacent to San Diego Bay, the airport and some limited annexations. As respondents point out, the trial court in the *Gorfine* action *denied* respondents' summary judgment motion, and in doing so specifically rejected their interpretation of the Port District's jurisdiction for purposes of the Political Reform Act.

Under these circumstances, judicial estoppel will not operate against respondents. The doctrine should be applied only when the person against whom it is asserted "was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true)." (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 183 [70 Cal.Rptr.2d 96]; *New Hampshire v. Maine* (2001) 532 U.S. 742, 750-751 [121 S.Ct. 1808, 1815, 149 L.Ed.2d 968] ["Absent success in a prior proceeding, a party's later inconsistent position introduces no 'risk of inconsistent court determinations,' [citation], and thus poses little threat to judicial integrity"].)

Nevertheless, TDE asks that we follow the principles stated in *Thomas v. Gordon* (2000) 85 Cal.App.4th 113, 118 [102 Cal.Rptr.2d 28], in which the Court of Appeal observed some California courts do not limit application of judicial estoppel to situations where the litigant was successful in asserting the contradictory position. In *Thomas*, the appellant admitted transferring her interest in two corporations to an entity owned solely by her girlfriend in order to keep it out of her creditors' hands, and then filed for bankruptcy, expecting to reclaim her funds after her debts were discharged. (*Id.* at p. 119.) She signed documents in the bankruptcy court claiming to list all of her assets but said nothing about those interests. (*Ibid.*) She later sued her accountant for negligence and fraud, claiming he failed to keep her apprised of the financial affairs of both corporations. (*Id.* at p. 115.) The accountant successfully moved for summary judgment in part on the ground the appellant should be judicially estopped from claiming any legal or equitable interest in the corporations sufficient to require the accountant to keep her apprised of their affairs. (*Id.* at pp. 117, 120.) Finding this to be the "rare situation" where the litigant has made an egregious attempt to manipulate the legal system, the Court of Appeal agreed the circumstances warranted application of judicial estoppel absent proof of appellant's success in the earlier litigation. (*Id.* at p. 119 [agreeing with the trial court that " 'this is as egregious as it gets' "].) In reaching this conclusion, the court observed that because of the nature of bankruptcy law, the appellant obtained a legal benefit from her prior statements as soon as they were made, because they resulted in an automatic stay preventing creditors from taking any action against her for a period of time. (*Ibid.*)

The circumstances here are distinguishable from those in *Thomas*. Respondents' position in *Gorfine* was not adopted by the trial court here, and we cannot conclude they have gained any advantage in the present action by virtue of the inconsistent position taken in the *Gorfine* matter. Notably, TDE has not explained with any meaningful authority or argument how the Port District's jurisdiction is relevant to any particular element of its causes of

action that would support the prima facie showing it must make to sustain its section 425.16 burden. Its statement that the jurisdiction issue was the "lynchpin" of the Port District's section 425.16 motion does not shed any light on that question, and it is simply incorrect; the Port District raised the jurisdiction argument in *reply* to TDE's assertion that respondents' actions fell outside the official duty privilege of Civil Code section 47, subdivision (a). As we have stated above, TDE's misplaced attack on respondents' assertion of defenses did not suffice to meet its independent burden in opposition to the section 425.16 motion to demonstrate a probability of prevailing on the merits of its claims.

### IV. *The Court Did Not Abuse Its Discretion in Denying TDE's Discovery Requests*

TDE contends the court erred by taking a "short-sighted, technical approach" and denying TDE's oral and written motions for discovery. TDE maintains the court's rulings violated its constitutional right to a jury trial because the "assessment of probability of success looks to trial and the evidence that will be presented at that time." The arguments are without merit.

Section 425.16, subdivision (g) provides: "All discovery proceedings in the action shall be stayed upon the filing of a notice of motion made pursuant to this section. The stay of discovery shall remain in effect until notice of entry of the order ruling on the motion. The court, on noticed motion and for good cause shown, may order that specified discovery be conducted notwithstanding this subdivision."

We review for abuse of discretion the trial court's decision as to whether a plaintiff has complied with the requirements of section 425.16, subdivision (g) to merit discovery prior to a hearing on the motion to strike. (*Schroeder v. Irvine City Council* (2002) 97 Cal.App.4th 174, 190-191 [118 Cal.Rptr.2d 330]; see also *Sipple v. Foundation for Nat. Progress* (1999) 71 Cal.App.4th 226, 247 [83 Cal.Rptr.2d 677]; *Lafayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 37 Cal.App.4th 855, 868 [44 Cal.Rptr.2d 46].) "Under this standard the reviewing court will not disturb the trial court's decision unless it 'has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination.' " (*Mendoza v. Club Car, Inc.* (2000) 81 Cal.App.4th 287, 301 [96 Cal.Rptr.2d 605].)

The court here did not abuse its discretion in denying TDE's requests. TDE's first request for discovery was not authorized under section

425.16, subdivision (g) because it was not made by noticed motion. (*Robertson v. Rodriguez* (1995) 36 Cal.App.4th 347, 357 [42 Cal.Rptr.2d 464]; see also *Braun v. Chronicle Publishing Co.* (1997) 52 Cal.App.4th 1036, 1052 [61 Cal.Rptr.2d 58] (*Braun*) [oral request for discovery at hearing on defendant's § 425.16 motion failed to comply with subd. (g) of § 425.16].) As for its second request for discovery, we will follow TDE's own cited authority—*Evans, supra,* 38 Cal.App.4th 1490—and conclude the court properly denied that request. In *Evans,* as here, the opposing plaintiff did not file a motion for discovery under subdivision (g) of section 425.16 until *after* the trial court granted the defendant's motion and the plaintiff moved for reconsideration of that ruling. (*Evans,* at pp. 1496, 1499.) The Court of Appeal concluded the tardy showing rendered the discovery request meritless. (*Id.* at p. 1499.) While the plaintiff in that case also did not make a proper showing of good cause, the statute requires *both* a timely motion and a showing of good cause. Absent either, the request must fail, as TDE's does here.

## V. *Attorney Fees*

 TDE contends the trial court erred by granting respondents $55,900 in attorney fees because respondents sought unreasonable and duplicative fees in their motion. Pointing out the trial court requested additional billing records from respondents' counsel before ruling on the motion, TDE maintains "[c]areful review of those records only confirms irregularity in the billing of this matter by Respondents' attorneys." The assertion is unaccompanied by any citation to the record or any explanation of which fees were unreasonable or duplicative. With this cursory argument, TDE has given us no basis to disturb the trial court's discretionary ruling on the attorney fees motion. (Cf. *Braun, supra,* 52 Cal.App.4th at pp. 1052-1053 [court upheld attorney fee award where plaintiff failed to present evidence that the award was based on unnecessary or duplicative work or any other improper basis]; see *Ketchum v. Moses, supra,* 24 Cal.4th at p. 1140 [abuse of discretion standard in trial court's assessment of lodestar fees under § 425.16, subd. (c)]; *Dowling, supra,* 85 Cal.App.4th at p. 1426 [same]; *Church of Scientology v. Wollersheim, supra,* 42 Cal.App.4th at p. 659.)

Under section 425.16, subd. (c), respondents are also entitled to recover their costs and attorney fees on appeal. (*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 785 [54 Cal.Rptr.2d 830].)

## Disposition

The judgment is affirmed. Respondents shall recover their costs and attorney fees on appeal, the amount of which shall be determined by the trial court.

Benke, Acting P. J., and Huffman, J., concurred.