Filed 8/26/13  Harkham Industries v. Jade Fashion CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| HARKHAM INDUSTRIES, INC., <br><br> Cross-complainant and Appellant, <br><br> v. <br><br> JADE FASHION & CO., INC. et al., <br><br> Cross-defendants and Respondents. | B242972 <br><br> (Los Angeles County <br> Super. Ct. No. BC479461) |

APPEAL from a judgment of the Superior Court of Los Angeles County, James R. Dunn, Judge.  Affirmed.

Sussman Shank, John A. Schwimmer and Clifford S. Davidson; Law Offices of Gary Freedman and Gary Freedman for Cross-complainant and Appellant.

Resch Polster & Berger, Robert W. Barnes and Sandra Khalili for Cross-defendants and Respondents.

_____

Appellant Harkham Industries, Inc. appeals from the trial court's order granting the special motion to strike brought by respondents Jade Fashion & Co., Inc., Resch Polsert & Berger LLP, and Sandra Khalili pursuant to Code of Civil Procedure section 425.16.[1] This appeal arises out of a dispute over monies allegedly owed by Harkham Industries to Jade Fashion for the purchase of certain goods. Jade Fashion filed a civil action against Harkham Industries for breach of contract and other related claims based on allegations that Harkham Industries breached the parties' written agreement by failing to make timely payments due under the terms of the agreement. While that action was pending, counsel for Jade Fashion sent a letter to counsel for Harkham Industries stating that a $30,000 check issued by Harkham Industries had been returned due to unavailable funds, and demanding that the unpaid amount be wired to Jade Fashion by the following business day. After making that payment and then confirming that the original check had in fact been paid, Harkham Industries filed a cross-complaint against Jade Fashion and its attorneys for fraud, conversion, and unjust enrichment.

The trial court granted the special motion to strike the cross-complaint. On appeal, Harkham Industries contends that the trial court erred in granting the motion because the allegedly fraudulent statements made in the letter did not pertain to any payments at issue in the underlying breach of contract action, constituted criminal conduct falling outside the scope of section 425.16, and were not protected by the litigation privilege. We conclude that the trial court properly granted the special motion to strike, and accordingly, affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I. The Underlying Dispute

Jade Fashion is in the business of manufacturing and selling garments to other businesses. Starting in 2010, Jade Fashion and Harkham Industries entered into a series

---

[1] Unless otherwise stated, all further statutory references are to the Code of Civil Procedure.

of agreements under which Harkham Industries purchased certain garments from Jade Fashion at specified quantities and prices. In 2011, Harkham Industries fell behind on its payment obligations. In November 2011, Sandra Khalili, a partner at Resch Polster & Berger and counsel for Jade Fashion, sent a letter to Harkham Industries demanding payment of the outstanding amount. Khalili thereafter had a series of discussions with David Meniane, Harkham Industries' Chief Financial Officer, who stated that his company was having cash flow problems and could not pay the balance due in a single payment. Following those discussions, Jade Fashion and Harkham Industries entered into a written agreement on November 28, 2011 regarding the repayment of the debt.

Under the terms of the agreement, Harkham Industries acknowledged that it owed Jade Fashion a total of $341,628.88 and agreed to make weekly payments of $25,000 until the balance was paid in full. Uri Harkham, the Chief Executive Officer of Harkham Industries, agreed to sign a continuing guaranty for the repayment of the debt, including the principal balance, accrued interest, collection costs, and attorney's fees. In exchange, Jade Fashion agreed that, if each weekly installment payment was timely made, Harkham Industries would be entitled to deduct a total of $17,500 from the final payment. The agreement further provided that, if Harkham Industries failed to fully and timely make any of the required payments, it would not be entitled to the $17,500 discount and the remaining unpaid balance would be immediately due and payable.

Harkham Industries did not make all of the weekly installment payments when they were due. In particular, it did not make timely payments on December 16 and 23, 2011, on January 20 and 27, 2012, and on February 3, 2012. Each of these payments was made a few days late. In January 2012, Meniane informed Khalili that Harkham Industries would be shutting down and requested that the payments be reduced from $25,000 to $5,000 per week. Khalili advised Meniane that Jade Fashion would not agree to any changes to the parties' agreement.

On February 10, 2012, Harkham Industries sent two checks to Jade Fashion—a check for $30,000 and a check for $39,128.77. The check for $39,128.77 reflected the remaining principal balance owed to Jade Fashion, less the $17,500 discount. Jade

3

Fashion refused, however, to cash the $39,128.77 check on the ground that Harkham Industries' failure to timely make all of the required installment payments under the agreement precluded it from applying the $17,500 discount to its final payment. On February 15, 2012, Khalili sent Harkham Industries a letter in which she demanded payment of the principal balance of $17,500, plus interest and attorney's fees incurred in collection of the debt, and indicated that the $39,128.77 check could be credited to its account if the balance due was paid. Harkham Industries refused to make the requested payment.

## II. Jade Fashion's Civil Complaint Against Harkham Industries

On February 23, 2012, Jade Fashion filed a civil action against Harkham Industries asserting causes of action for breach of contract, goods sold and delivered, open book account, account stated, and breach of guaranty. The complaint specifically alleged that Harkham Industries had breached the parties' November 2011 agreement by failing to comply with the payment terms set forth in the agreement, including refusing to pay the remaining principal balance of $17,500 for the goods it had ordered from Jade Fashion. The complaint sought damages in the amount of $56,628.77 (the sum of the $17,500 discount and the $39,128.77 uncashed check), plus interest and attorney's fees. That same day, Jade Fashion also filed an ex parte application for a right to attach order pursuant to section 483.010. The trial court continued the hearing on Jade Fashion's application to March 8, 2012, giving Harkham Industries until March 5, 2012 to file an opposition.

## III. Khalili's March 2, 2012 Letter Concerning the $30,000 Check

On February 29, 2012, Jade Fashion's bank, East West Bank, informed Jade Fashion in an email that the $30,000 check from Harkham Industries dated February 10, 2010 had not cleared. The email specifically stated as follows: "As of today, the check has no [sic] paid yet, funds not available, but it doesn't seems like [sic] been returned. Please check with your customer. Let me know if need [sic] my help. Thanks."

4

In the late afternoon on Friday, March 2, 2012, Khalili sent a letter to counsel for Harkham Industries in which she stated, in pertinent part, as follows: "As you know, this firm represents Jade Fashion & Co., Inc. ('Jade.') [¶] Harkham Industries, Inc. dba Jonathan Martin and/or Johnny Martin ('Jonathan Martin') gave our client check no. 170258 dated February 10, 2012 in the amount of $30,000. The check has been returned unpaid due to unavailable funds. A copy of the bank's notification is attached. This letter serves as notice and demand that Jonathan Martin and Uri Harkham, as guarantor, wire the sum of $30,000 to our client no later than noon March 5, 2012. [¶] At this juncture, the sum due and owing to our client is increased by $30,000. We will supplement our attachment papers to reflect the additional sums due and owing by Jonathan Martin and Uri Harkham. The total sum of $139,958.41 is now due from Jonathan Martin and Mr. Harkham as follows: [¶] 1. Principal: $86,628.77 [¶] 2. Interest: $16,329.64 (through March 2, 2012) [¶] 3. Attorney's fees: $37,000." Khalili enclosed with her letter a copy of the $30,000 check, which included a text box with the typewritten notation "-funds not available -no stop."

On the morning of Monday, March 5, 2012, Meniane requested that Harkham Industries' bank, Comerica Bank, make a wire transfer of $30,000 to Jade Fashion. According to Meniane, he made the request without first inquiring about the status of the check with Comerica Bank because of Jade Fashion's pending application for a right to attach order and Harkham Industries' desire to make sure all of the payments required by the parties' agreement had been made. However, later that day, Meniane followed up with the bank to ascertain why the check had not cleared. The bank informed Meniane that the check had not been returned for insufficient funds and had in fact been paid on February 13, 2012. Harkham Industries demanded the return of the additional $30,000 payment, but Jade Fashion refused.

## IV.  Harkham Industries' Cross-Complaint Against Jade Fashion and Its Counsel

On March 21, 2012, Harkham Industries filed a cross-complaint against Jade Fashion, Khalili, and Resch Polster & Berger for fraud, conversion, and unjust

5

enrichment.  In the first cause of action for fraud, it was alleged that Khalili fraudulently represented in her March 2, 2012 letter that the $30,000 check had been returned due to unavailable funds, and that Harkham Industries reasonably relied on such statements in transferring an additional $30,000 to Jade Fashion.  In the second cause of action for conversion, it was alleged that Jade Fashion and its counsel converted the $30,000 wire transfer by inducing Harkham Industries to make the transfer through fraudulent representations and thereafter refused to return such payment.  In the third cause of action for unjust enrichment, it was alleged that, through their wrongful conduct, Jade Fashion and its counsel had been unjustly enriched at Harkham Industries' expense.

## V.    The Special Motion to Strike the Cross-Complaint

On May 17, 2012, Jade Fashion and its attorneys filed a special motion to strike the cross-complaint pursuant to section 425.16.  They argued in the motion that, because the statements in Khalili's March 2, 2012 letter were made in the course of litigation and directly related to Harkham Industries' performance under the parties' agreement, each cause of action in the cross-complaint was based on conduct in furtherance of the right of petition and was barred by the litigation privilege.  In support of the motion, Khalili submitted two declarations in which she stated that she did not send the letter with the intent to defraud Harkham Industries, but rather because she believed East West Bank's statement that the check had not cleared due to insufficient funds to be true.  Khalili further stated that she did not forge or otherwise alter the copy of the check that she had enclosed with the letter, and that at the time she sent the letter, she believed the notation on the check had been made by East West Bank.

In opposing the special motion to strike, Harkham Industries argued that section 425.16 did not apply because the $30,000 check was not in dispute in the underlying breach of contract action, and the alleged misrepresentations in the March 2, 2012 letter about the status of the check constituted criminal fraud and forgery.  Harkham Industries further asserted that the litigation privilege did not apply because the letter did not pertain

6

to the subject matter of the litigation, and neither the letter nor the copy of the check had been submitted to the trial court as part of the underlying suit.[2]

On June 12, 2012, the trial court heard the special motion to strike, and granted the motion finding that the statements in the March 2, 2012 letter constituted petitioning activity under section 425.16 because they were made in connection with the breach of contract action, and that Harkham Industries could not show a probability of prevailing on its claims because the statements were protected by the litigation privilege. In response to the specific arguments raised by Harkham Industries, the court found that the $30,000 check was part of the outstanding debt obligation at issue in the underlying suit and was reasonably related to the subject matter of that litigation even if it was not specifically referenced in the complaint. The court further found that there was no evidence that, as a matter of law, Jade Fashion or its attorneys had engaged in criminal fraud or forgery by misstating the status of the check. At the conclusion of the hearing, counsel for Harkham Industries made an oral request to conduct discovery to further support its opposition. The trial court denied the request for failure to comply with the statutory procedure for seeking discovery under section 425.16.

On June 19, 2012, the trial court entered a written order granting the special motion to strike and dismissing each cause of action in the cross-complaint. Harkham Industries filed a timely notice of appeal.

---

[2] In its opposition papers, Harkham Industries also noted that, prior to filing the special motion to strike, Khalili had objected to being deposed about the truth or falsity of the statements in her March 2, 2012 letter based on the attorney-client privilege and the litigation privilege. However, in opposing the special motion to strike, Harkham Industries did not request an opportunity to conduct discovery, nor did it file a separate motion for discovery pursuant to section 425.16, subdivision (g).

7

## DISCUSSION

### I.     Standard Of Review

Section 425.16 provides, in pertinent part, that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) Section 425.16 must be "construed broadly" to effectuate the statute's purpose which is to encourage participation in matters of public significance and to ensure that such participation is not chilled through an abuse of the judicial process. (§ 425.16, subd. (a).)[3]

Resolution of a section 425.16 special motion to strike requires a two-step process. First, the moving party must make a threshold showing that the challenged cause of action arises from constitutionally protected activity. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056; *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.) If the moving party satisfies this prong, the burden shifts to the opposing party to demonstrate a probability of prevailing on the merits of the claim. (*Rusheen v. Cohen*, *supra*, at p. 1056; *Equilon Enterprises v. Consumer Cause, Inc.*, *supra*, at p. 67.) We review a trial court's ruling on a special motion to strike de novo, conducting an independent review of the record. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325; *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

### II.     Arising From Constitutionally Protected Activity

A cause of action arises from protected activity within the meaning of section 425.16 if the conduct of the defendant on which the cause of action is based was an

---

[3]     Section 425.16 is commonly referred to as the anti-SLAPP statute. SLAPP is an acronym for "Strategic Lawsuit Against Public Participation." (*Jarrow Formulas, Inc., v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1.)

act in furtherance of the defendant's right of petition or free speech. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 ["statutory phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech"]; *Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 ["the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity"].) Under section 425.16, an act in furtherance of the right of petition or free speech includes "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law. . . ." (§ 425.16, subd. (e)(2).)

California courts "have adopted a fairly expansive view of what constitutes litigation-related activities within the scope of section 425.16." (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 908.) "[S]tatements, writings and pleadings in connection with civil litigation are covered by the anti-SLAPP statute, and that statute does not require any showing that the litigated matter concerns a matter of public interest. [Citations.]" (*Rohde v. Wolf* (2007) 154 Cal.App.4th 28, 35.) In general, "a statement is 'in connection with' litigation under section 425.16 . . . if it relates to the substantive issues in the litigation and is directed to persons having some interest in the litigation." (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1266.) "'[C]ommunications preparatory to or in anticipation of the bringing of an action or other official proceeding" also fall within the ambit of section 426.16. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115.) "Accordingly, although litigation may not have commenced, if a statement 'concern[s] the subject of the dispute' and is made 'in anticipation of litigation "contemplated in good faith and under serious consideration"' [citations] then the statement may be petitioning activity protected by section 425.16." (*Neville v. Chudacoff*, *supra*, at p. 1268.) The provisions of section 425.16 "protect not only the litigants, but also their attorneys' litigation-related statements." (*Coretronic Corp. v. Cozen O'Connor* (2011) 192 Cal.App.4th 1381, 1389; see also *Rusheen v.*

9

*Cohen*, *supra*, 37 Cal.4th at p. 1056; *Jarrow Formulas, Inc. v. LaMarche*, *supra*, 31 Cal.4th at p. 734; *Kashian v. Harriman*, *supra*, at pp. 907-908.)

**A.** **The Statements in the March 2, 2012 Letter were Made in Connection with Litigation.**

Harkham Industries argues that Respondents failed to make the threshold showing that the cross-complaint arose from constitutionally protected activity because the subject matter of Khalili's March 2, 2012 letter was unrelated to Jade Fashion's underlying lawsuit. Harkham Industries specifically asserts that, because the letter pertained solely to the $30,000 check and not to the $17,500 discount that was the subject of the breach of contract action, Respondents could not show that the letter was related to any substantive issues in the litigation. This argument does not withstand scrutiny.

The underlying suit filed by Jade Fashion arose out of Harkham Industries' purported failure to make timely payments due under the November 2011 agreement. Jade Fashion's complaint specifically alleged that Harkham Industries had breached the parties' contract "by failing and refusing to comply with the payment terms set forth in the Forbearance Agreement, including, by failing and refusing to pay the remaining principal balance of $17,500." At the time the February 2012 complaint was filed, the damages sought consisted of the $17,500 unpaid discount and the $39,128.77 uncashed check because, apart from interest and attorney's fees, those were the sole amounts which Jade Fashion asserted had not been paid in accordance with the parties' agreement. Therefore, while the damages claimed in Jade Fashion's complaint were directed at the $17,500 discount, the object of the breach of contract action was to collect the monies allegedly owed by Harkham Industries under the terms of the agreement. Khalili's March 2, 2012 letter, which concerned an additional $30,000 payment that had been due under the agreement and had been reported by Jade Fashion's bank as not yet paid, was logically related to the object of that litigation.

The statements contained in the letter further demonstrate that they were made in connection with the underlying lawsuit. Indeed, the letter itself directly referenced the

10

pending litigation between the parties and related how the additional $30,000 was now part of the larger amount that was in dispute. Khalili specifically stated in the letter that "[a]t this juncture, the sum due and owing to our client is increased by $30,000." She also stated that "we will supplement our attachment papers to reflect the additional sums due and owing. . . ." Khalili then set forth an itemized list of the amounts she alleged were owed under the parties' agreement, including principal, interest, and attorney's fees. The principal listed was $86,628.77, which consisted of the $56,628.77 amount that was being sought in the underlying lawsuit plus the additional $30,000 sum that Khalili was now claiming was also in dispute. Thus, the contents of the letter clearly show that it was sent in anticipation of litigating a claim for the additional $30,000 as part of the pending breach of contract action.

Moreover, Harkham Industries' argument that the subject matter of the letter had nothing to do with the underlying lawsuit is belied by its own pleadings and admissions in the trial court. In its cross-complaint against Respondents, Harkham Industries alleged that, at the time it received the letter, it was imminently required to file an opposition to Jade Fashion's pending application for a right to attach order and that it arranged the payment of an additional $30,000 to ensure that, consistent with its opposition, it had fully performed under the parties' agreement. In his declaration, Harkham Industries' Chief Financial Officer confirmed that he requested the wire transfer without first inquiring into the status of the check with his bank because of the pendency of Jade Fashion's application in the underlying suit and his company's desire to make sure all of the payments required by the agreement had been made. At the hearing, Harkham Industries' counsel made similar representations to the trial court, recounting that because his client had intended to oppose the application on the ground it had made all payments due under the agreement, it felt compelled to transfer the additional amount demanded in the letter prior to filing its opposition, which had been due that same day. Accordingly, as reflected in these statements, Harkham Industries itself understood that the dispute in the breach of contract action was not simply about the $17,500 discount, but about whether it had fully performed under the parties' agreement by paying all amounts that

11

were due and owing.  Based on this record, the letter was sufficiently related to the substantive issues in the litigation to constitute protected activity under section 425.16.

**B.  Respondents' Conduct in Connection with the March 2, 2012 Letter Was Not Illegal as a Matter of Law.**

Harkham Industries also contends that Respondents failed to establish that they engaged in constitutionally protected activity because their alleged actions in connection with the March 2, 2012 letter constituted criminal conduct falling outside the scope of section 425.16.  In particular, Harkham Industries claims that it sufficiently alleged that Respondents committed the crime of fraud by intentionally misrepresenting the status of the $30,000 check in Khalili's letter, and the crime of forgery by altering the bank record that was attached to the letter.  This claim likewise lacks merit.

The mere allegation of illegality is not sufficient to remove an action from section 425.16's motion to strike procedure.  "[C]onduct that would otherwise come within the scope of the anti-SLAPP statute does not lose its coverage … simply because it is *alleged* to have been unlawful or unethical." (*Kashian v. Harriman*, *supra*, 98 Cal.App.4th at pp. 910-911.)  It is only in the "narrow circumstance" in which the "the defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law, [that] the defendant is precluded from using the anti-SLAPP statute to strike the plaintiff's action." (*Flatley v. Mauro*, *supra*, 39 Cal.4th at pp. 316, 320; see also *Soukup v. Law Offices of Herbert Hafif*, *supra*, 39 Cal.4th at p. 285 [where "a defendant's assertedly protected constitutional activity is alleged to have been illegal . . ., the illegality must be established as a matter of law either through the defendant's concession or because the illegality is conclusively established by the  evidence"]; *Malin v. Singer* (2013) 217 Cal.App.4th 1283, 1298-1299 [where extortion claim based on an attorney demand letter did not constitute criminal conduct as a matter of law, it was subject to dismissal under the anti-SLAPP statute].)  "If, however, a factual dispute exists about the legitimacy of the defendant's conduct, it cannot be resolved within the first step but must be raised by the plaintiff in connection with the

12

plaintiff's burden to show a probability of prevailing on the merits." (*Flatley v. Mauro*, *supra*, at p. 316; see also *Governor Gray Davis Com. v. American Taxpayers Alliance* (2002) 102 Cal.App.4th 449, 460 [where "the legality of [the defendant's] exercise of a constitutionally protected right [is] in dispute in the action, the threshold element in a section 425.16 inquiry has been established"].) Here, Respondents do not concede illegality and it has not been conclusively established by the evidence.

Harkham Industries argues that Khalili committed criminal fraud by intentionally misrepresenting that the $30,000 check had been returned for unavailable funds to induce the company to pay an additional $30,000 to which her client was not entitled. However, Khalili specifically denied that she acted with any such fraudulent intent, stating in her declaration as follows: "I did not write the March 2, 2012 letter intending to defraud Harkham [Industries] . . . or to induce their reliance; rather, I believed East West Bank's statement that the check had not cleared because of insufficient funds." Harkham Industries reasons that Khalili must have intentionally misrepresented the status of the check because there is a significant difference between a check not being paid due to unavailable funds, as reported by East West Bank in its email, and a check being returned unpaid due to unavailable funds, as represented by Khalili in her letter. As further support for its argument, Harkham Industries points to the timing of the letter, which was sent one business day prior to the deadline for filing an opposition to Jade Fashion's application for a right to attach order and demanded that payment be made by the following business day. However, even with an inference that Khalili intended to deceive Harkham Industries about the status of the check would not conclusively show criminal fraud.

Harkham Industries also asserts that Respondents committed criminal forgery by altering the copy of the check that was enclosed with the letter. The copy of the check included a text box with the typewritten notation "-funds not available-no stop." In response to Harkham Industries' allegations of forgery, Khalili stated in a declaration that she did not forge or otherwise alter the copy of the check, and that at the time she sent the letter, she believed the notation on the check had been made by East West Bank. At the

13

hearing on the special motion to strike, Khalili clarified that she did not receive the copy of the check or the email about the check being unpaid directly from the bank, but rather obtained both documents from her client. Although the source of the typewritten notation was not disclosed, none of the evidence submitted to the trial court indisputably established that any of Respondents was responsible for making it, or that the notation was made with the intent to defraud Harkham Industries. In fact, the notation itself was consistent with the information provided by the bank that the check had not been paid due to unavailable funds. While such information was ultimately determined to be incorrect, there was no conclusive evidence that either Jade Fashion or Khalili had any basis for knowing that the bank was mistaken and that the check had in fact cleared at the time the letter was sent.

In sum, because the conduct of Respondents was directly related to the pending litigation between the parties and was not shown to be illegal as a matter of law, Respondents met their burden of proving that the cross-complaint arose from constitutionally protected activity within the meaning of section 425.16.

### III.    Probability of Prevailing on the Merits

Once Respondents made a prima facie showing that their conduct fell within the scope of section 425.16, the burden shifted to Harkham Industries to prove a reasonable probability of prevailing on its claims. To demonstrate a probability of prevailing on the merits of a challenged cause of action, "the plaintiff must 'state[ ] and substantiate[ ] a legally sufficient claim.' [Citation.]" (*Jarrow Formulas, Inc. v. LaMarche*, *supra*, 31 Cal.4th at p. 741.) The plaintiff must make a prima facie showing of facts that would, if proven, support a judgment in his or her favor. (*Soukup v. Law Offices of Herbert Hafif*, *supra*, 39 Cal.4th at p. 291.) For purposes of this inquiry, the court """"must accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.""""" (*Flatley v. Mauro*, *supra*, 39 Cal.4th at p. 326.) Although "'the court does not *weigh* the credibility or comparative probative strength of competing evidence, it should grant the

14

motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim.' [Citation.]" (*Soukup v. Law Offices of Herbert Hafif*, *supra*, at p. 291.)

"The litigation privilege, codified at Civil Code section 47, subdivision (b), provides that a 'publication or broadcast' made as part of a 'judicial proceeding' is privileged." (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241.) The privilege is "relevant to the second step in the anti-SLAPP analysis in that it may present a substantive defense a plaintiff must overcome to demonstrate a probability of prevailing." (*Flatley v. Mauro*, *supra*, 39 Cal.4th at p. 323.) The litigation privilege is absolute in nature and "is now held applicable to any communication, whether or not it amounts to a publication [citations], and all torts except malicious prosecution." (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212.) It thus "has been applied in 'numerous cases' involving 'fraudulent communication or perjured testimony,'" including civil actions for fraud. (*Flatley v. Mauro*, *supra*, at p. 322; see, e.g., *Navarro v. IHOP Properties, Inc.* (2005) 134 Cal.App.4th 834, 843-844 [fraud claim based on alleged false promises made in negotiating stipulated judgment]; *Navellier v. Sletten* (2003) 106 Cal.App.4th 763, 771-772 [fraud claim based on alleged misrepresentation to be bound by settlement release in prior litigation]; *Home Ins. Co. v. Zurich Ins. Co.* (2002) 96 Cal.App.4th 17, 24-26 [fraud claim based on alleged false statements made by attorneys to induce settlement of lawsuit].) Because it is absolute, the privilege applies irrespective of any malice or intent to cause injury. (*Rusheen v. Cohen*, *supra*, 37 Cal.4th at p. 1063; *Silberg v. Anderson*, *supra*, at pp. 216, 220.)

"The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action. [Citations.]" (*Silberg v. Anderson*, *supra*, 50 Cal.3d at p. 212.) The requirement that the statement be made "in" a judicial proceeding does not limit the litigation privilege to statements made at trial or to evidence offered in open court. (*Rusheen v. Cohen*, *supra*, 37 Cal.4th at p. 1057.) Rather, the privilege

15

"applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved." (*Silberg v. Anderson*, *supra*, at p. 212.) As a result, "'communications with "some relation" to judicial proceedings' are 'absolutely immune from tort liability'" by the privilege. (*Rusheen v. Cohen*, *supra*, at p. 1057.)

In this case, Harkham Industries failed to demonstrate a probability of prevailing on the merits of its action because the claims alleged in the cross-complaint were barred as a matter of law by the litigation privilege. Each cause of action in the cross-complaint was based on the common allegation that Respondents falsely represented in Khalili's March 2, 2012 letter that the $30,000 check had been returned for unavailable funds and did so with the intent to defraud Harkham Industries of an additional $30,000 sum. The allegedly fraudulent statements set forth in both the letter and the attached copy of the check fell squarely within the scope of the litigation privilege.

The statements constituted a communication made on behalf of a litigant in the course of a judicial proceeding. The statements also were logically related to the underlying suit and were made to achieve the objects of that litigation, i.e., to collect on the monies allegedly owed to Jade Fashion by Harkham Industries under the parties' November 2011 agreement. Any allegation that the statements were false, fraudulent, or made with a malicious intent is immaterial to the application of the privilege. (*Rusheen v. Cohen*, *supra*, 37 Cal.4th at p. 1063 ["the litigation privilege is absolute and applies regardless of malice"]; *Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 959 [privileged communication need not be "accurate" or "truthful" but simply within the "category of communication permitted by law"]; *O'Keefe v. Kompa* (2000) 84 Cal.App.4th 130, 135 ["even an act committed fraudulently or with malice is privileged under [Civil Code] section 47, subdivision (b)"].)

Harkham Industries asserts that the litigation privilege does not apply because Respondents' allegedly fraudulent scheme, which included deceiving Harkham Industries into transferring an additional $30,000 payment and then retaining those funds to try to

16

force a settlement, constituted a course of non-communicative conduct not protected by the privilege. In support of this argument, Harkham Industries principally relies on *Drum v. Bleau, Fox & Associates* (2003) 107 Cal.App.4th 1009, 1027-1028 (*Drum*), where the Court of Appeal held that the wrongful act of levying on property in execution of a judgment was a non-communicative act outside the scope of the litigation privilege even if the act of applying for a writ of execution was a privileged communication. However, in *Rusheen v. Cohen*, *supra*, 37 Cal.4th 1048, the California Supreme Court expressly disapproved of *Drum* for failing to address the relevant question of whether the *gravamen* of the action was communicative or non-communicative conduct. (*Id*. at pp. 1061, 1065.) Turning to that question, the Supreme Court held that "if the gravamen of the action is communicative, the litigation privilege extends to noncommunicative acts that are necessarily related to the communicative conduct." (*Id*. at p. 1065 [where gravamen of action was procurement of a default judgment based on allegedly false declarations of service, acts necessary to enforce judgment were protected by the litigation privilege].)

Here, the gravamen of Harkham Industries' cross-complaint was the alleged fraudulent inducement of an additional $30,000 payment based on the false statements in Khalili's March 2, 2012 letter about the status of the check. As discussed above, such communications were absolutely privileged under Civil Code section 47, subdivision (b) as statements made in connection with the pending litigation. The scope of the privilege also extended to the subsequent acts taken by Respondents to effectuate the purported fraud, including Jade Fashion's acceptance of the $30,000 wire transfer and its retention of those additional funds. Because the litigation privilege applied to the specific conduct upon which the cross-complaint was based, Harkham Industries failed to meet its burden of proving a probability of prevailing on the merits of its claims. The trial court therefore did not err in granting the special motion to strike.

## IV.    Denial of Request for Discovery

Harkham Industries also challenges the trial court's denial of its oral request at the hearing on the special motion to strike for an opportunity to conduct discovery of facts to

support its opposition. Harkham Industries specifically contends that it had good cause for requesting discovery based on Respondents' own "duplicitous discovery conduct" in connection with bringing the motion. We need not decide, however, whether Harkham Industries made a sufficient showing of good cause because it failed to comply with the statutory procedure for seeking discovery under section 425.16, and thus, its request was properly denied.[4]

Section 425.16, subdivision (g) provides as follows: "All discovery proceedings in the action shall be stayed upon the filing of a notice of motion made pursuant to this section. The stay of discovery shall remain in effect until notice of entry of the order ruling on the motion. The court, on noticed motion and for good cause shown, may order that specified discovery be conducted notwithstanding this subdivision." "We review for abuse of discretion the trial court's decision as to whether a plaintiff has complied with the requirements of section 425.16, subdivision (g) to merit discovery prior to a hearing on the motion to strike. [Citations.] 'Under this standard the reviewing court will not disturb the trial court's decision unless it "has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination."' [Citation.]" (*Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1247.)

Here, the record reflects that Harkham Industries waited until the hearing on Respondents' special motion to strike to make an oral request for discovery. "Section 425.16, subdivision (g), however, requires that requests to conduct limited discovery pending a hearing on a special motion to strike must be in the form of a noticed motion. [Citation.]" (*Contemporary Services Corp. v. Staff Pro Inc.* (2007) 152 Cal.App.4th

---

**4**    In support of its argument that it had good cause for seeking discovery, Harkham Industries included in its appellant's appendix certain discovery-related documents that the parties served prior to the filing of the special motion to strike. Respondents have objected to the inclusion of such documents in the record on appeal on the ground that they were never filed with the trial court. In light of our conclusion that the request for discovery was procedurally barred under section 425.16, we need not address this issue.

1043, 1061.) "[I]n the absence of such a noticed motion, the anti-SLAPP statute prescribe[s] the court's power to allow or proceed with discovery proceedings, and the court lack[s] inherent power to act directly contrary to the statutory mandate." (*Britts v. Superior Court* (2006) 145 Cal.App.4th 1112, 1129; see, e.g., *Contemporary Services Corp. v. Staff Pro Inc.*, *supra*, at p. 1062 [trial court did not abuse its discretion in denying ex parte application to conduct discovery "when section 425.16, subdivision (g) unequivocally requires a noticed motion for such requests"]; *Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.*, *supra*, 106 Cal.App.4th at pp. 1247-1248 [oral request for discovery made at hearing on special motion to strike "was not authorized under section 425.16, subdivision (g) because it was not made by noticed motion"]; *Braun v. Chronicle Publishing Co.* (1997) 52 Cal.App.4th 1036, 1052 [oral request for discovery made at hearing on section 425.16 motion "was not a timely and properly noticed motion for discovery"].) Because Harkham Industries failed to satisfy the procedural requirements of section 425.16, subdivision (g) by filing a noticed motion for discovery, the trial court did not abuse its discretion in denying the untimely request.

## DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal.


ZELON, J.

We concur:


WOODS, Acting P. J.


SEGAL, J.[*]

_____

[*]    Assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

19