Filed 1/15/15  Ostly v. Omura CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THOMAS OSTLY,<br><br>　　　Plaintiff and Appellant,<br><br>v.<br><br>ANNE TAMIKO OMURA et al.,<br><br>　　　Defendants and Respondents. | A137411<br><br>(Alameda County<br>Super. Ct. No. RG12-621666) |
| THOMAS OSTLY,<br><br>　　　Plaintiff and Appellant,<br><br>v.<br><br>ANNE TAMIKO OMURA,<br><br>　　　Defendant and Respondent. | A138596<br><br>(Alameda County<br>Super. Ct. No. RG12-621666) |
| THOMAS OSTLY,<br><br>　　　Plaintiff and Appellant,<br><br>v.<br><br>DANIEL SIEGEL et al.,<br><br>　　　Defendants and Respondents. | A138691<br><br>(Alameda County<br>Super. Ct. No. RG12-621666) |

**I.**

**INTRODUCTION**

Following a jury verdict in his favor in the underlying sexual harassment and wrongful termination litigation brought by his former employee, Allison Moreno (Moreno), Thomas Ostly (Ostly) filed a malicious prosecution action against the

1

attorneys who represented Moreno in that litigation (respondent attorneys[1]).  He also sued Anne Tamika Omura (Omura), an attorney who consulted with and advised both Moreno and respondent attorneys in connection with that litigation, but never appeared as an attorney of record. The respondent attorneys and Omura brought special motions to strike Ostly's complaint for malicious prosecution pursuant to Code of Civil Procedure section 425.16, the anti-SLAPP statute.[2]  The trial court granted both anti-SLAPP motions and awarded attorney fees.  In these consolidated appeals, Ostly contends the special motions to strike were improperly granted and the attorney fees awards must be reversed.  Finding no error, we will affirm.

## II.
### FACTS AND PROCEDURAL HISTORY

The underlying case arose from a two-month sexual relationship between Ostly and Moreno.  At the time, Ostly was a partner with Ostly, Murphy, Vu (OMV), where Moreno worked as his paralegal.  The facts relating to their relationship, the acrimonious atmosphere which developed, Moreno's departure from the law firm, and the ensuing litigation are all described in great detail in our nonpublished opinion issued in connection with the appeal of this underlying action.  (*Moreno v. Ostly* (A130455, July 31, 2012).)

Briefly, in or around December 2005, Ostly hired Moreno to work at OMV.  Ostly was Moreno's direct supervisor, and the attorney for whom she primarily worked.  In May 2006, Ostly and Moreno began to have a sexual relationship which they kept secret

---

[1]  Respondent attorneys are composed of the law firm of Siegel & Yee, and individual attorneys Daniel Siegel, Anne Butterfield Weills, Jose Luis Fuentes and Dean Royer.

[2]  All undesignated statutory references are to the Code of Civil Procedure. Section 425.16, subdivision (b)(1), states:  "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

2

from the other employees of OMV. Moreno claimed their first sexual encounter took place after she became intoxicated as a result of "Ostly's persistence" that she have several drinks with him after work. She claimed Ostly "forced himself sexually" on her when she was "hardly conscious," and was powerless to stop it. After this, Moreno continued to have a sexual relationship with Ostly but she viewed none of these encounters as consensual. She claimed she acquiesced to Ostly's sexual demands based on a coercive and manipulative working environment. For his part, Ostly claimed their sexual relationship was entirely consensual.

On July 11, 2006, the relationship ended. Three days later, Moreno's employment at OMV ended. Moreno claimed she was fired when she sought to terminate her sexual relationship with Ostly. Ostly claimed she voluntarily resigned from OMV after he criticized her work performance.

Shortly after Moreno's employment was terminated, she contacted Omura, an attorney who was a former employer and personal friend. A meeting was conducted at Omura's house on a weekend during which Moreno shared confidential attorney-client information. On the Monday following that meeting, Omura contacted respondent attorneys regarding Moreno's case. Respondent attorneys then became Moreno's attorneys of record, although Omura continued to consult with Moreno and respondent attorneys in an unofficial capacity.[3]

On August 8, 2007, Moreno filed a lawsuit against Ostly. The operative second amended complaint sought relief under only two theories—sexual harassment and wrongful termination. In response to Moreno's complaint, Ostly filed a cross-complaint for defamation, intentional infliction of emotional distress, and intentional interference with prospective economic relations. Ostly claimed Moreno's accusations caused him serious damage, including damage to his professional reputation, inability to continue to practice law, loss of his partnership with OMV, and severe emotional distress.

---

[3] In unrelated litigation, a jury found Omura had defamed Ostly to a third party and did so with malice fraud and oppression, awarding Ostly $462,000. (*Ostly v. Omura*, Alameda County Superior Court, Case No. RG07-323484.)

Ostly filed a pretrial motion seeking summary judgment or summary adjudication of Moreno's action. As part of his showing in support of summary judgment, Ostly submitted transcripts of numerous text messages and emails from Moreno which he claimed demonstrated the consensual nature of the parties' relationship. The court denied Ostly's request for summary judgment, finding triable issues of material fact existed on Moreno's sexual harassment and wrongful termination claims.

Both Moreno's complaint and Ostly's cross-complaint went to a jury trial on June 28, 2010. On July 30, 2010, the jury returned a verdict in favor of Ostly on both the complaint and the cross-complaint. By special verdict on Ostly's cross-complaint, the jury found that Moreno had defamed Ostly by falsely accusing him of raping or sexually assaulting her; and in making these false accusations, she acted with hatred or ill will toward Ostly. The jury awarded Ostly approximately $1.25 million in compensatory and punitive damages.

On November 29, 2010, Moreno filed a notice of appeal. On July 13, 2011, Moreno filed her opening brief. The brief did not seek reversal of the judgment in favor of Ostly on Moreno's claims for sexual harassment and wrongful termination. Instead, Moreno sought reversal of the jury's verdict on Ostly's cross-complaint for defamation, intentional infliction of emotional distress, and intentional interference with prospective economic relations. On July 31, 2012, this court issued a nonpublished opinion affirming the judgment. (*Moreno v. Ostly*, *supra*.)

Ostly filed the instant action on March 16, 2012.[4] Among other causes of action, Ostly's complaint stated a cause of action for malicious prosecution in which he alleges respondent attorneys and Omura "commenced, encouraged, participated in, and directed

---

[4] Both here and below, respondent attorneys and Omura claim the complaint was not filed within the one-year statute of limitations (§ 340.6). The trial court rejected this argument. In light of our conclusion that the trial court properly dismissed this case pursuant to the anti-SLAPP statute, we need not address the statute of limitations claim.

4

the filing of the Moreno Action, and continued to prosecute the Moreno Action, without probable cause to do so and with hatred and malice toward Ostly.[5]

On September 25 and 28, 2012, respectively, respondent attorneys and Omura each moved to strike Ostly's complaint under the anti-SLAPP statute (§ 425.16). Respondent attorneys and Omura contended that (1) malicious prosecution actions are subject to the anti-SLAPP provisions and (2) there is no probability that Ostly will prevail on the malicious prosecution claim at trial. The trial court agreed and granted the anti-SLAPP motions.

Both Omura and respondent attorneys noticed motions for attorney fees and costs incurred in connection with their anti-SLAPP motions pursuant to section 425.16, subdivision (c)(1). The motions were granted and Omura was awarded $45,819.51 and respondent attorneys were awarded $39,095.50.

On May 15, 2013, Ostly filed Appeal No. A138691 from the trial court's rulings granting the anti-SLAPP motions filed by Omura and respondent attorneys. On May 7, 2013, Ostly filed Appeal No. A138596 from the judgment entered in Omura's favor. On May 15, 2013, Ostly filed Appeal No. A137411 from the judgment entered in respondent attorneys' favor. All three appeals were consolidated by stipulation of the parties on May 29, 2013.

### III.

### DISCUSSION

#### A. Standards Governing Anti-SLAPP Motions to Strike

"A SLAPP suit—a strategic lawsuit against public participation—seeks to chill or punish a party's exercise of constitutional rights to free speech and to petition the government for redress of grievances. [Citation.]" (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055; *Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 815, fn. 2, disapproved on other grounds in *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53,

---

[5] Although Ostly's complaint alleged additional causes of action for abuse of process and negligence, he has abandoned all issues with regard to these causes of action on appeal.

5

68.)  Stated another way, a SLAPP lawsuit is one that arises from constitutionally protected speech or petitioning activity that "lacks even minimal merit."  (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 (*Navellier*).)

Section 425.16 provides a summary procedure for disposing of SLAPP suits through the vehicle of what has become known as an anti-SLAPP motion.  The Supreme Court has succinctly described the analysis and resolution of an anti-SLAPP motion:  It "requires the court to engage in a two-step process.  First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity.  The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute.  (§ 425.16, subd. (b)(1).)  If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim."  (*Equilon Enterprises v. Consumer Cause, Inc.*, *supra*, 29 Cal.4th at p. 67.)  In assessing the probability of success, section 425.16 "establishes a procedure where the trial court evaluates the merits of the lawsuit using a summary-judgment-like procedure at an early stage of the litigation.  [Citation.]"  (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 192.)  "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute."  (*Navellier*, *supra*, 29 Cal.4th at p. 89, original italics.)

Ostly's malicious prosecution action against respondent attorneys and Omura arises from filing and litigating Moreno's sexual harassment/wrongful termination action against him.  The filing and prosecution of a lawsuit are acts in furtherance of a person's right of petition or free speech and, therefore, constitute protected activity under the anti-SLAPP statute.  (§ 425.16, subds. (e)(1), (e)(2).)  Accordingly, respondent attorneys and Omura have met their burden of demonstrating the malicious prosecution cause of action arises from protected activity. (See *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 734-735 [holding that a malicious prosecution lawsuit necessarily arises

6

from constitutionally protected activity, i.e., filing the underlying lawsuit]; *Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 214-215 ["plain language of the anti-SLAPP statute dictates that every claim of malicious prosecution is a cause of action arising from protected activity because every such claim necessarily depends upon written and oral statements in a prior judicial proceeding"].)

Consequently, the issues on appeal focus on the second prong of the statute, dealing with whether Ostly has "demonstrated a probability of prevailing" on the merits of his malicious prosecution cause of action. (*Navellier*, *supra*, 29 Cal.4th at p. 88.) The California Supreme Court has described Ostly's burden as follows: "To establish a probability of prevailing, the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' [Citations.]" (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 291 (*Soukup*).) We do not "weigh conflicting evidence to determine whether it is more probable than not that plaintiff will prevail on the claim . . . ." (*Taus v. Loftus* (2007) 40 Cal.4th 683, 714.) Instead, our standard of review requires us to consider the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law. (*Soukup*, *supra*, 39 Cal.4th at p. 269, fn. 3.) "These determinations are legal questions, and we review the record de novo. [Citation.]" (*Damon v. Ocean Hills Journalism Club* (2000) 85 Cal.App.4th 468, 474; *Lieberman v. KCOP Television, Inc.* (2003) 110 Cal.App.4th 156, 163-164; *Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 (*Wilson*).)

## B. Omura is not a Proper Malicious Prosecution Defendant

The trial court found Ostly's malicious prosecution action against Omura was barred as a matter of law because Ostly failed to produce any evidence that Omura was "actively involved in bringing or continuing" Moreno's sexual harassment/wrongful termination lawsuit against Ostly. We agree.

Ostly claims Omura's liability should be based on her actions in "advising, counseling and encouraging" Moreno and respondent attorneys. Ostly points to Omura's

7

declaration acknowledging that she: (1) referred Moreno to respondent attorneys; (2) "collaborated and worked together" with respondent attorneys on Moreno's behalf until Moreno's complaint was filed; and (3) continued to consult with respondent attorneys, "although to a lesser extent" after the complaint was filed.[6]

However, it is undisputed that Omura was never Moreno's counsel of record in Moreno's sexual harassment/wrongful termination case against Ostly. She never signed any pleadings or filings in the Moreno action, her name does not appear on any caption or pleading filed with the court, nor did she sign any correspondence to Ostly, or anyone else, on Moreno's behalf.

Liability for malicious prosecution is predicated upon either: (1) an affirmative act in the malicious initiation of a case without probable cause; or (2) causing continued prosecution of a case notwithstanding knowledge that it was maliciously filed without probable cause. (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 969-970.) Both circumstances obviously presume a certain degree of control over the litigation.

Ostly can point this court to no case where a consulting attorney, who never formally appeared in an action, was held liable for malicious prosecution. The cases he relies on all involve counsel of record, even if they had minimal participation in the case. (*Sycamore Ridge Apartments LLC v. Naumann* (2007) 157 Cal.App.4th 1385, 1407 [finding attorneys who were associated in as counsel, but had not done any work on the underlying case, could be liable for malicious prosecution]; *Lujan v. Gordon* (1977) 70 Cal.App.3d 260, 262-263 [allowing malicious prosecution against other attorneys in firm listed as counsel of record on pleadings and letters on theory of agency]; *Soukup*, *supra*, 39 Cal.4th at p. 297 [attorney defendant "cannot insulate himself from [malicious prosecution] liability, as a matter of law, simply because he asserts that his role in the underlying action was limited to that of appellate counsel"].)

---

[6] Ostly claims that Omura actively persuaded and influenced respondent attorneys' decision to include an allegation that Ostly and Moreno's first sexual encounter was nonconsensual. However, he has tendered no evidentiary support for this accusation, and bases it instead on speculation and innuendo.

Extending the scope of malicious prosecution actions to encompass a consulting attorney who does not have the authority to dismiss, prosecute or withdraw from the case would run counter to the advice given litigants in *Cole v. Patricia A. Myers & Associates, AFC* (2012) 206 Cal.App.4th 1095 (*Cole*). In *Cole*, the court concluded that an attorney "whose name appears on all filings" in a case that may have been maliciously prosecuted cannot avoid liability for malicious prosecution "by intentionally failing to learn anything about" the case. (*Id.* at p. 1117.) In essence, *Cole* held that attorneys may be liable for malicious prosecution even if their only conduct is allowing their names to appear on pleadings.

In reaching its conclusion, the court offered the following advice to attorneys who wish to avoid malicious prosecution liability when their role is only tangential or contingent. Attorneys in that position "may easily avoid liability for malicious prosecution . . . if they refrain from formally associating in [the case] until their role is triggered," or at least "refrain from lending their names to pleadings or motions about which they know next to nothing." (*Cole*, *supra*, 206 Cal.App.4th at p. 1119.) Essentially *Cole* drew a bright-line rule for purpose of liability for malicious prosecution––only attorneys of record can legitimately be considered to have control over the case with the power to decide how and whether to continue litigating. By contrast, this control is completely absent when an attorney acts merely as a consultant, but is not counsel of record.

No reasonable interpretation of the law would allow a malicious prosecution claim to be made against Omura when it would have the practical effect of making her potentially liable for a lawsuit which she did not initiate, which she did not cause to be prosecuted, and which she did not have the authority to decide whether to continue. The trial court properly granted Omura's anti-SLAPP motion on this basis.

## C. Probable Cause Element of Malicious Prosecution

As discussed, in granting the anti-SLAPP motion, the court found Ostly failed to satisfy his second-prong burden to show the probability of succeeding on the merits of his malicious prosecution claim against respondent attorneys. Specifically, the court found

9

"[b]ased on the evidence presented, the Court cannot conclude that any reasonable attorney would have agreed that the underlying *Moreno v. Ostly* action was totally and completely without merit." (Italics added.)

"To establish a cause of action for malicious prosecution, a plaintiff must prove that the underlying action was: (1) terminated in the plaintiff's favor, (2) prosecuted without probable cause, and (3) initiated with malice. [Citation.]" (*Franklin Mint Co. v. Manatt*, *Phelps & Phillips, LLP* (2010) 184 Cal.App.4th 313, 333.) There is no dispute that the underlying wrongful termination/sexual harassment action terminated favorably to Ostly. As dictated by the arguments on appeal, our analysis will focus on the second element, whether probable cause existed for each cause of action alleged against Ostly.[7] (*Videotape Plus, Inc. v. Lyons* (2001) 89 Cal.App.4th 156, 161 (*Videotape Plus*).)

Probable cause is a very low standard. (*Marijanovic v. Gray, York & Duffy* (2006) 137 Cal.App.4th 1262, 1271 [" 'This rather lenient standard for bringing a civil action reflects "the important public policy of avoiding the chilling of novel or debatable legal claims." ' [Citation.]"].) "A litigant or attorney who possesses competent evidence to substantiate a legally cognizable claim for relief does not act tortiously by bringing the claim, even if also aware of evidence that will weigh against the claim. Plaintiffs and their attorneys are not required, on penalty of tort liability, to attempt to predict how a trier of fact will weigh the competing evidence, or to abandon their claim if they think it likely the evidence will ultimately weigh against them. They have the right to bring a claim they think unlikely to succeed, so long as it is arguably meritorious. [Citation.]" (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 822, fn. omitted (*Wilson*).)

In the same vein, our Supreme Court explained: " 'Probable cause may be present even where a suit lacks merit. Favorable termination of the suit often establishes lack of merit, yet the plaintiff in a malicious prosecution action must *separately* show lack of

---

[7] The trial court, in its ruling on the anti-SLAPP motion, did not address the malice element and respondent attorneys do not raise any argument with respect to malice on appeal. Accordingly, to the extent any claim of absence of malice could be raised, this argument is forfeited on appeal. (See *Mundy v. Lenc* (2012) 203 Cal.App.4th 1401, 1406.)

probable cause. Reasonable lawyers can differ, some seeing as meritless suits which others believe have merit, and some seeing as totally and completely without merit suits which others see as only marginally meritless. Suits which *all* reasonable lawyers agree totally lack merit—that is, those which lack probable cause—are the least meritorious of all meritless suits. Only this subgroup of meritless suits present[s] no probable cause.' [Citations.]" (*Jarrow Formulas*, *supra*, 31 Cal.4th at p. 743, fn. 13, quoting *Roberts v. Sentry Life Insurance* (1999) 76 Cal.App.4th 375, 382, original italics (*Roberts*).)

The probable cause element presents a legal question which is determined by the objective standard of whether, based on the facts known, any reasonable attorney would think the claim is legally tenable. (*Wilson*, *supra*, 28 Cal.4th at p. 817.) Significantly, in making an assessment of probable cause an attorney is entitled to rely on the information provided by the client, unless the attorney is on notice of specific factual errors in the client's version that render the claim untenable. (*Swat-Fame, Inc. v. Goldstein* (2002) 101 Cal.App.4th 613, 625-627; *Morrison v. Rudolph* (2002) 103 Cal.App.4th 506, 512-513, disapproved on other grounds by *Zamos v. Stroud*, *supra*, 32 Cal.4th at pp. 971-973 (*Morrison*); *Daniels v. Robbins*, *supra*, 182 Cal.App.4th at p. 223.) Without knowledge that his or her client has made specific false statements, an attorney " 'may, without being guilty of malicious prosecution, vigorously pursue litigation in which [the attorney] is unsure of whether his [or her] client or the client's adversary is truthful, so long as that issue is genuinely in doubt. [Citation.]" (*Morrison*, *supra*, 103 Cal.App.4th at p. 513.)

A finding of probable cause ends the inquiry. "If the court determines that there was probable cause to institute the prior action, the malicious prosecution action fails, whether or not there is evidence that the prior suit was maliciously motivated. [Citations.]" (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 875.)

**D. The Denial Of Summary Judgment Established Probable Cause**

As already noted, Ostly filed a motion for summary judgment against Moreno's complaint in the underlying action. Respondent attorneys contend that the denial of this

11

summary judgment motion conclusively established probable cause existed for pursuing Moreno's sexual harassment/wrongful termination action. In this case, they are correct.

California law holds that any positive rulings on the legal merits of an underlying case has the general effect of establishing probable cause in bringing the suit. (*Bergman v. Drum* (2005) 129 Cal.App.4th 11, 22 ["where an interim determination in the underlying action has the effect of demonstrating that a suit is not totally and completely without merit, it will have the effect of establishing probable cause to bring the suit"].) Accordingly, denial of a motion for summary judgment in an underlying case shows probable cause existed for the action. (*Roberts*, *supra*, 76 Cal.App.4th at pp. 383-384.) The *Roberts* court explained why: "First, summary judgment motions usually are heard only after full discovery develops the evidence relevant to the claim. . . . [¶] Second, the judge denying summary judgment is *impartial. . . .* So a judge's denial of summary judgment accurately predicts that reasonable lawyers would find a case arguably meritorious. [Citation.] [¶] Because denial of summary judgment is a sound indicator of probable cause, it is sensible to accept it as establishing probable cause defeating a later malicious prosecution suit." (*Id.* at pp. 383-384; accord, *Slaney v. Ranger Ins. Co.* (2004) 115 Cal.App.4th 306, 319 [" 'denial of summary judgment is a sound indicator of probable cause, it is sensible to accept it as establishing probable cause defeating a later malicious prosecution suit' "].)

This reasoning has been endorsed by our Supreme Court: "A trial court's conclusion that issues of material fact remain for trial 'necessarily impl[ies] that the judge finds at least some merit in the claim. The claimant may win, if certain material facts are decided favorably. This finding (unless disregarded) compels [the] conclusion that there is probable cause, because probable cause is lacking only in the *total absence* of merit.' [Citation.] Giving effect to this conclusion 'serves the policy . . . to discourage dubious malicious prosecution suits.' [Citation.]" (*Wilson*, *supra*, 28 Cal.4th at p. 819, fn. omitted.)

Here, Ostly, believing there was no merit to Moreno's lawsuit, brought a motion for summary judgment asserting that Moreno had no evidence to establish her causes of

12

action for sexual harassment/wrongful discharge against him.  The trial court disagreed, finding each and every cause of action was sufficiently tenable as to avoid summary adjudication.

Thus, a judge examined the evidence and found Moreno's claims were not totally and completely without evidentiary support.  To the contrary, the judge found they were sufficiently meritorious to go to trial.  The trial court's ruling, determining there were triable issues of fact supporting Moreno's causes of action, "compels [the] conclusion that there is probable cause, because probable cause is lacking only in the *total absence* of merit."  (*Roberts*, *supra*, 76 Cal.App.4th at p. 383, original italics.)  Consequently, "it is sensible to accept it as establishing probable cause [in] defeating a later malicious prosecution suit."  (*Id.* at p. 384.)

## E.  The Fraud Exception to the Interim Adverse Judgment Rule does not Apply

The use of a summary judgment denial in the underlying action as a predicate for a showing of probable cause as a matter of law is subject to an exception where the interim judgment was induced by fraud or perjury.  In that case, the presumption of probable cause is rebutted.  (*Roberts*, *supra*, 76 Cal.App.4th at p. 384 ["For example, if denial of summary judgment was induced by materially false facts submitted in opposition, equating denial with probable cause might be wrong.  Summary judgment might have been granted but for the false evidence."].)

Ostly contends the fraud exception applies here because his motion for summary judgment was denied "based upon Moreno's fraudulent and perjurious testimony." Specifically, as he did in the trial court, Ostly claims the fraud exception applies because the jury found against Moreno and for Ostly on his defamation counterclaim, including a special verdict finding that Moreno acted with hatred or ill will toward Ostly when she falsely told third parties that Ostly raped and/or sexually assaulted her.

First, "the fraud exception requires ' "knowing use of false and perjured testimony." ' [Citation.]"  (*Antounian v. Louis Vuitton Malletier* (2010) 189 Cal.App.4th 438, 452.)  There is no evidence respondent attorneys knowingly used false and perjured

13

testimony in opposing Ostly's summary judgment/adjudication motion. Respondent attorneys persuasively argued below, "[w]hether Moreno welcomed Ostly's sexual advances was information clearly personal to and only known by Moreno and not anything that [respondent attorneys] could have otherwise known. [Citation.]" Ostly speculates on a broad conspiracy theory, whereby he claims respondent attorneys conspired with Omura to manufacture the allegation that Ostly had sexually assaulted Moreno to make it easier for Omura to defend Ostly's defamation lawsuit against her. However, he has produced no evidence to support his allegations. The standard for a plaintiff opposing an anti-SLAPP motion requires admissible evidence, not speculation. (*Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist*. (2003) 106 Cal.App.4th 1219, 1237-1238.)

Additionally, Ostly has failed to show that "summary judgment might have been granted but for the false evidence." (*Roberts*, *supra*, 76 Cal.App.4th at p. 384.) As explained below, *even if* Moreno perjured herself, falsified verified pleadings, and generally withheld the truth about whether her first sexual encounter with Ostly was consensual or nonconsensual, she still would have been able to raise a triable issue of fact with respect to her causes of action for sexual harassment and wrongful discharge.

In attempting to show respondent attorneys obtained summary judgment by submitting false facts, Ostly repeatedly argues on appeal that Moreno was making a claim against Ostly for sexual assault and/or rape. However, the record plainly shows that the causes of action alleged against Ostly were employment-based claims for sexual harassment and wrongful termination. Moreno's allegation that that during their first sexual encounter Ostly "forced himself sexually on Moreno while she was very intoxicated and hardly conscious" was just *one of many* factual allegations supporting these causes of action.

Moreover, there are specific jury instructions for assault and sexual battery. (See, e.g., CACI Nos. 1300, 1306.) Those were not given on Moreno's causes of action and the jury instructions and verdict forms pertained solely to the employment-related claims for sexual harassment and wrongful termination.

14

Regardless of whether their first sexual encounter was consensual or nonconsensual, respondent attorneys established the sexual harassment and wrongful discharge claims had evidentiary support. In granting summary judgment in Moreno's favor, the court set out the genuine issues of material fact supporting Moreno's claims. With respect to wrongful termination, the court found as follows: "While [Moreno] cannot demonstrate actual termination, there are triable issues as to whether [Moreno] was constructively terminated due to an intolerable working condition."

As for sexual harassment, the court found as follows: "As to the hostile environment claim, [Moreno] has demonstrated triable issues of material fact as to whether the initial sexual encounter and the ensuing 'relationship' were consensual or welcome. [Citations.] [Moreno] has also demonstrated triable issues as to whether [Ostly's] conduct was so severe and pervasive as to alter the conditions of the employment and create an abusive working relationship for [Moreno]. [Citations.] As to the quid pro quo claim, the same triable issue on (lack of) consent is present and further, [Moreno] has raised a triable issue as to whether [Ostly's] words and actions implicitly conditioned her continued employment on the sexual relationship. [Citations.] In addition, the proximity in time between [Moreno's] alleged attempt to break off the relationship and the dispute with [Ostly] over mistakes at work (and [Ostly's] alleged threat to terminate [Moreno]) raises a disputed issue as to whether [Moreno's] job security was tied to the continued 'relationship.' [Citations.] This is for the jury to decide."

It is evident from the text of the order denying Ostly summary judgment that the court's ruling was not predicated solely on Moreno's description of the parties' first sexual encounter as occurring without her consent. Rather, the court's ruling was based on the many triable issues of disputed fact surrounding the parties' two-month personal and professional relationship. Moreover, the court indicated that the proximity in time (three days) between Moreno's attempt to break off the parties' relationship and the termination of her employment was sufficient, in and of itself, to raise a triable issue of

15

fact as to whether her continued employment was tied to her continued relationship with Ostly.

Here, Ostly tries to expand the law of malicious prosecution to individual allegations within a cause of action. He attempts to accomplish this by, in effect, arguing that a malicious prosecution claim can spring from an unsupported allegation within a cause of action, even when the cause of action as a whole is supported by probable cause. This approach is inconsistent with numerous authorities. (See, e.g., *Soukup*, *supra*, 39 Cal.4th at p. 292 [to foreclose a malicious prosecution claim, "[p]robable cause . . . must exist for *every cause of action* advanced in the underlying action"]; *Videotape Plus*, *supra*, 89 Cal.App.4th at p. 161 ["To preclude a later claim of malicious prosecution, a plaintiff must have probable cause *for each cause of action* it alleges against a defendant." (Italics added.)]; *Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 824 ["Denial of a defense summary judgment motion on grounds that a triable issue exists . . . establishes that the plaintiff has substantiated, or can substantiate, the elements of *his or her cause of action* . . . ."] (italics added).)

Therefore, like the trial court, we conclude Ostly has failed to show that the denial of his motion for summary judgment was obtained through false evidence. Consequently, the denial of his summary judgment motion in the underlying action operates as a conclusive presumption of probable cause to commence and maintain Moreno's lawsuit. The trial court therefore correctly granted respondent attorneys' anti-SLAPP motions.[8]

### F. Omura and Respondent Attorneys Are Entitled to Fees and Costs

As we noted at the outset, the trial court awarded Omura and respondent attorney fees and costs. Ostly appeals the attorney fee rulings only insofar as it is dependent on

---

[8] Because we have concluded Omura was not a proper malicious prosecution defendant, we do not discuss the merits of Ostly's malicious prosecution claim against her. However, we emphasize the analysis used to uphold the trial court's grant of respondent attorneys' anti-SLAPP motion is relevant to Omura as well.

16

the granting of Omura and respondent attorneys' anti-SLAPP motions.  He does not otherwise challenge the determination of fees and costs.

Pursuant to section 425.16, subdivision (c), Omura and respondent attorneys are also entitled to recover their attorney fees and costs on appeal in an amount to be determined by the trial court.  (*Tuchscher Development*, *supra*, 106 Cal.App.4th at p. 1249; *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 785 ["Since section 425.16, subdivision (c) provides for an award of appellate attorney fees and costs to a prevailing defendant on a special motion to strike, and does not preclude recovery of appellate attorney fees by a prevailing defendant-respondent, those fees are recoverable.  [Citation.]"].)

## IV.

## DISPOSITION

The orders granting the special motions to strike and awarding fees and costs are affirmed.  The matter is remanded to the trial court to determine the amount of attorney fees and costs on appeal to be awarded to the respondent attorneys and Omura.

 

                                _____

                                RUVOLO, P. J.

We concur:


_____

REARDON, J.


_____

RIVERA, J.

18