Filed 2/19/26  Qassimyar v. Ortega CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| AKHTAR QASSIMYAR,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>ALBINA ORTEGA, et al.,<br><br>Defendants and Respondents. | D084317<br><br><br>(Super. Ct. No.<br>37-2024-00006695-CU-FR-CTL) |

APPEAL from orders of the Superior Court of San Diego County, Marcella O. McLaughlin, Judge.  Affirmed.

Akhtar Qassimyar, in pro. per., for Plaintiff and Appellant.

Higgs Fletcher & Mack, John Morris and Steven M. Brunolli, for Defendants and Respondents.

In this multilayered litigation, plaintiff Akhtar Qassimyar first sued a group of defendants in a medical negligence action, which ended when the defendants obtained summary judgment and Qassimyar did not appeal. Roughly eight months later, Qassimyar filed a new action against those same defendants, as well as the attorneys who defended them in the first lawsuit, claiming they all conspired to submit fraudulent documents in support of the successful summary judgment motion.

Defendants responded to this new fraud complaint by filing an anti-SLAPP motion, which the trial court granted. After the court awarded attorney's fees and costs to the prevailing parties, Qassimyar has appealed to challenge both the granting of the anti-SLAPP motion as well as the award of attorney's fees and costs. Finding no error by the trial court, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In June 2022, Qassimyar brought an unsuccessful medical negligence action against various defendants associated with Scripps Health and Scripps Memorial Hospital (the Scripps defendants) arising out of an ear lavage procedure. The superior court granted defendants' motions for summary judgment, and Qassimyar did not appeal. Instead, roughly eight months later, he filed this second action against the Scripps defendants, also naming their lawyers in their earlier action (the Lawyer defendants), and claiming that together they submitted fraudulently altered medical records in order to obtain summary judgment in the medical negligence action.

In response, the Scripps defendants and the Lawyer defendants filed an anti-SLAPP motion (Code Civ. Proc., § 425.16[1]), contending that Qassimyar's

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise indicated.

fraud complaint arose out of their constitutionally protected conduct in responding to his first lawsuit. Relying on subdivision (e)(1) of the statute, they specifically argued that Qassimyar's claims were based on statements made and conduct engaged in during a "judicial proceeding" while defending against the medical negligence action. Qassimyar asserted that the anti-SLAPP statute did not apply because falsification of medical records is illegal, and illegal conduct is not constitutionally protected. He also argued that his complaint was exempt from anti-SLAPP protections because it was "brought solely in the public interest and on behalf of the general public" within the meaning of section 425.17, subdivision (b). Rejecting Qassimyar's arguments, the court granted the motion, then awarded attorney's fees and costs to defendants as the prevailing parties.

**DISCUSSION**

We begin with some basic principles of appellate review. The trial court's decision is presumed correct, and the burden is on the appellant to affirmatively demonstrate error. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609.) This burden includes several components. Appellants must provide the reviewing court with a record of the trial court proceedings that contains all the relevant materials. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.) Likewise, they must submit a brief summarizing the relevant facts with citations to the record and pertinent legal authority demonstrating the claimed error. (Cal. Rules of Court, rule 8.204(a)(1)(B) & (C); *William Jefferson & Co.*, *Inc. v. Orange County Assessment Appeals Bd. No. 2* (2014) 228 Cal.App.4th 1, 6, fn. 2; *Pringle v. La Chapelle* (1999) 73 Cal.App.4th 1000, 1003.) We disregard any facts mentioned in the brief that are not part of the record. (*Pulver v. Avco Financial Services* (1986) 182 Cal.App.3d 622, 632.) The brief must also identify each point of argument under a separate

3

heading, supported by a logical explanation and pertinent authority. (Cal. Rules of Court, rule 8.204(a)(1)(B).) A failure to do so forfeits the appellant's ability to rely on that argument. (*Winslett v. 1811 27th Avenue, LLC* (2018) 26 Cal.App.5th 239, 248, fn. 6.)

## A. *Anti-SLAPP Motion*

"[T]he anti-SLAPP statute is designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern. [Citations.] To that end, the statute authorizes a special motion to strike a claim 'arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue.' " (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 883–884 (*Wilson*).)

"Anti-SLAPP motions are evaluated through a two-step process. Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*), quoting § 425.16, subd. (b).) "[T]he Legislature has defined such protected acts in furtherance of speech and petition rights to include a specified range of statements, writings, and conduct in connection with official proceedings and matters of public interest." (*Park*, at p. 1062; see § 425.16, subd. (e).) As relevant here, the anti-SLAPP statute protects any written or oral statement made "before" a judicial proceeding or "in connection with an issue under consideration or review" by a judicial body. (§ 425.16, subd. (e)(1) & (2).)

If a defendant carries its first-step burden, "the plaintiff must then demonstrate its claims have at least 'minimal merit.' " (*Park, supra,* 2

4

Cal.5th at p. 1061.)  Importantly, the anti-SLAPP statute does not *prohibit* claims against defendants arising from their exercise of protected rights of petition or speech.  "It only provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384.)  Thus, the second step of the process operates "as a 'summary-judgment-like procedure.' " (*Ibid.*)  "[T]he plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' " (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821.)  This requires that the plaintiff submit admissible evidence that would sustain a judgment in his favor.  (*Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1236–1237, 1239 (*Tuchscher*).)  "If the plaintiff cannot make this showing, the court will strike the claim." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009.)

Qassimyar argues the trial court erred in granting defendants' anti-SLAPP motion.  He does not dispute that the legal claim he seeks to pursue is based on allegedly fraudulent statements and conduct by defendants "in connection with an issue under consideration or review by a . . . judicial body" within the meaning of section 425.16, subdivision (e)(2).  (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056 [" 'A cause of action "arising from" defendant's litigation activity may appropriately be the subject of a section 425.16 motion to strike' "].)  Yet he argues that the gravamen of his claim "is not the act of submitting documents in litigation, but the fraudulent alteration of those documents—an act that is unlawful regardless of whether litigation subsequently occurred."  Here, however, the asserted harm to Qassimyar flows entirely from the submission of the allegedly fraudulent documents

5

*to the court*, and we reject any attempt to suggest that his claim does not arise from protected litigation activity.

Qassimyar also relies on *Flatley v. Mauro* (2006) 39 Cal.4th 299 (*Flatley*), to assert that the anti-SLAPP procedures do not apply to his claim because he has alleged *illegal* conduct by defendants that does not qualify as constitutionally protected activity. It is true that *Flatley* recognizes a narrow exception to applying the anti-SLAPP statute if the defendant's conduct is "illegal as a matter of law," meaning "either the defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal . . . ." (*Flatley*, at p. 320; see also *Dziubla v. Piazza* (2020) 59 Cal.App.5th 140, 151.) But defendants vigorously dispute that they engaged in anything illegal, and there is certainly no evidence that conclusively establishes any such illegality.

To the extent Qassimyar seeks to rely on the statutory exception found in section 425.17, subdivision (b), that reliance is misplaced. Subdivision (b) of the statute provides that anti-SLAPP procedures do not apply "to any action brought solely in the public interest or on behalf of the general public if all of the following conditions exist:

> "(1) The plaintiff does not seek any relief greater than or different from the relief sought for the general public or a class of which the plaintiff is a member. . . .
>
> "(2) The action, if successful, would enforce an important right affecting the public interest, and would confer a significant benefit, whether pecuniary or nonpecuniary, on the general public or a large class of persons.
>
> "(3) Private enforcement is necessary and places a disproportionate financial burden on the plaintiff in relation to the plaintiff's stake in the matter." (§ 425.17, subd. (b).)

6

Nothing in Qassimyar's complaint indicates an intent to pursue the action on behalf of the general public. His factual allegations refer to the falsification and/or fabrication of *his* medical records. There is no reference to anyone else's records. Qassimyar then claims these falsified and altered medical records were used *against him* during court proceedings in his medical negligence case. Section 425.17 has no application to Qassimyar's action.

Because defendants established that the claims against them arose from protected activity, the burden shifted to Qassimyar to offer facts sufficient to sustain a judgment in his favor. (*Wilson, supra,* 7 Cal.5th at p. 891.) This he failed to do. The only evidence he presented was his declaration pointing to what he believed was a discrepancy in the number of pages of medical records that were provided to him before his medical negligence action was filed—what he called his "true" medical records—and the larger number he later received in formal discovery. This discrepancy was the basis for his opinion that the medical records provided to him in discovery were falsified. Defendants' objections to virtually the entire declaration—and in particular Qassimyar's opinion—were sustained by the trial court. That evidentiary ruling is not challenged on appeal, meaning Qassimyar offered no *admissible* evidence to support his claim.[2] (See *Tuchscher, supra,* 106 Cal.App.4th at p. 1239.)

Even if we were to consider Qassimyar's declaration, it would provide no support for a fraud judgment in his favor. In comparing documents he previously received with medical records formally produced in discovery, he failed to identify a single page that was substantively different. As the supervisor of the Release of Information department at Scripps, Gail Tristan,

_____

[2] Qassimyar's brief does not even acknowledge the evidentiary objections or the court's ruling sustaining them.

stated in her declaration, Scripps provided Qassimyar with 62 pages of "pertinent" medical records, minimizing duplication, when he submitted a "standard patient request" prior to filing his medical negligence action. After the action was filed, Scripps later produced 427 pages of medical records in formal discovery. When responding to discovery requests in litigation, it is Scripps's custom and practice to produce "any and all records," which "results in much duplication in the printed record." Tristan specifically indicated that a "complete set" of Qassimyar's records was provided to counsel in discovery "without any modification or alteration." Despite the fact that he received more—and, presumably, duplicative—information in formal discovery, Qassimyar offers no evidence to support his assertion that any medical records were altered or falsified.

The trial court did not err in granting defendants' anti-SLAPP motion.

## B. *Attorney's Fees and Costs*

"[U]nder Code of Civil Procedure section 425.16, subdivision (c), any SLAPP defendant who brings a successful motion to strike is entitled to mandatory attorney fees." (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1131.) Here, the Scripps defendants and the Lawyer defendants, each separately represented, filed separate attorney's fee requests accompanied by declarations from the respective attorneys. These declarations documented the number of hours expended by various lawyers on particular tasks connected to the anti-SLAPP motions and the hourly rate normally billed by that lawyer. The Scripps defendants requested a total of $24,396 in attorney's fees and slightly more than $4,565 in costs. The Attorney defendants asked for $23,590 in fees and roughly $1,450 in costs. Applying a lodestar analysis (*Ketchum*, at p. 1131), the trial court awarded the Scripps defendants a substantially reduced amount of approximately $11,800 in

8

attorney's fees and $4,540 in costs. The Lawyer defendants also received a reduced amount of approximately $13,212 in fees and $1,378 in costs.

Qassimyar contends that even if the anti-SLAPP motion was properly granted, the amount of attorney's fees and costs awarded to defendants as prevailing parties was excessive and unjustified. He asserts that although the trial court significantly reduced the amount requested by defendants, the award nonetheless "reflects overbilling, vague block billing, and unnecessary duplication."

Our role in reviewing the amount of attorney's fees awarded to a prevailing party is necessarily a limited and highly deferential one. (*Children's Hospital and Medical Center v. Bontá* (2002) 97 Cal.App.4th 740, 777.) "Fees approved by the trial court are presumed to be reasonable," and the burden is on the appellant to demonstrate error in the award. (*Consumer Privacy Cases* (2009) 175 Cal.App.4th 545, 556.) "[C]ourts repeatedly have stated that the trial court is in the best position to value the services rendered by the attorneys in his or her courtroom . . . and this includes the determination of the hourly rate that will be used in the lodestar calculus." (*569 East County Boulevard LLC v. Backcountry Against the Dump, Inc.* (2016) 6 Cal.App.5th 426, 437.) "An attorney's testimony as to the number of hours worked is sufficient evidence to support an award of attorney fees, even in the absence of detailed time records." (*Steiny & Co., Inc. v. California Electric Supply Co.* (2000) 79 Cal.App.4th 285, 293.) Where the trial court applies the proper criteria, we will not overturn a fee award absent a manifest abuse of discretion. (*The Kennedy Com. v. City of Huntington Beach* (2023) 91 Cal.App.5th 436, 465.)

We find no error in the award of fees and costs in this case. The trial court did not merely "rubberstamp" the attorney's fee request.

(See *Sweetwater Union High School Dist. v. Julian Union Elementary School Dist.* (2019) 36 Cal.App.5th 970, 994–995.) It conscientiously reviewed the declarations submitted by defendants' attorneys and substantially reduced the requested amounts, carefully explaining the reasons for its decision. It cut the number of hours based on necessity and perceived "duplicative efforts." It refused to apply an hourly rate higher than the discount rate negotiated by the clients.

While we can appreciate Qassimyar's effort to compare the amount of time he spent opposing the attorney's fee motions with the time billed by defense counsel in preparing them, that is not the standard for determining a reasonable fee.[3] His general allegations of bill "padding" and "grossly inflated" hours, unaccompanied by a developed argument and proper citation to the record, are insufficient to establish that the trial court abused its broad discretion.

---

[3] Qassimyar asserts, without citation to the record, that the trial court "failed to consider [his] inability to pay" the awarded fee. Citing *Garcia v. Santana* (2009) 174 Cal.App.4th 464, a decision with three separate opinions, he argues that the losing party's ability to pay is a factor the court can consider "in public-interest and equity-based cases." As we have already explained, however, Qassimyar's action sought to vindicate his personal interests; this was not a case brought on behalf of the general public. More importantly, there is nothing in the record to demonstrate that the trial court did *not* consider Qassimyar's financial condition, among many other factors, in determining a reasonable fee.

10

## DISPOSITION

The orders are affirmed.  Defendants are entitled to costs on appeal.


DATO, J.

WE CONCUR:


O'ROURKE, Acting P. J.


KELETY, J.